GOLDEN *v.* BARTLETT ILLUMINATING CO.

ACCORD AND SATISFACTION—RECEIPT IN FULL—DURESS.

    An employé who is paid semi-monthly in checks, each of which recites that the payment is "in full for services to date," and who, upon the termination of his employment, accepts a check similarly worded for the balance of his salary, giving therefor his receipt in full, cannot avoid the effect of the settlement, and recover for alleged extra services, by showing that he signed such receipt without reading it, on being told that, if he did not sign it, he would get nothing at all.

Error to Saginaw; Wilber, J. Submitted October 7, 1897. Decided October 25, 1897.

*Assumpsit* by Joseph Golden against the Bartlett Illuminating Company for work and labor performed. From a judgment for defendant on verdict directed by the court, plaintiff brings error. Affirmed.

*Van Kleeck & Anneke*, for appellant.

*Weadock & Purcell*, for appellee.

MOORE, J. This action was brought to recover $10 a month for 26 months, during which time the plaintiff was at work for the defendant. The circuit judge directed a verdict in favor of defendant. Plaintiff appeals.

The plaintiff testified that he was an expert electrician in the employ of defendant company, at $60 a month; that in 1893 the collector of the company quit work, and it was agreed that plaintiff, in addition to the work he was then doing, was to do the work of the collector, and was to receive $10 a month therefor; and that he worked under that contract 27 months, or until October 22, 1895. He testified that he was paid by the company $60 a month during all of this time, and was paid the extra $10

for the first month after the contract was entered upon, but had never been paid the extra $10 a month for the other 26 months; that he asked the superintendent for his pay at the end of the second month, and was told that he would have to pay for the bicycle he was using; that, after some words, plaintiff decided he "would pay a reasonable price for the wheel, and then demand the $10 again;" that he let it run along three months; "and I asked him again, and he laughed at me, and said I did not have the wheel paid for, and walked away;" that he asked him two or three times for it, "but he never agreed to pay me afterwards. He never said he would agree to give it to me or would not give it to me, but he would laugh at me, and walk away. Said I did not have the wheel paid for, or something, and walk away, until I quit; and then he said he did not owe me anything. * * * At the time I quit, I had some words.

"*Q.* You had some words?

"*A.* Oh, we settled up.

"*Q.* When you settled, you gave a receipt, did you?

"*A.* Yes.

"*Q.* Under what circumstances did you give that receipt?

"*A.* It was forced upon me; you might as well say it was. One man held the checks, and the other two stood back and forth, and walked up and down, and said I would sign a receipt, or he wouldn't give me a damn cent; and, of course, I was excited, and I signed the receipt. I did not read either the receipt or the checks when handed to me.

"*Q.* Who was walking up and down?

"*A.* Mr. Lempke.

"*Q.* At the time you signed the receipt, do you say you read it or not?

"*A.* No, sir; I did not.

"*Q.* Was it read to you?

"*A.* No, sir.

"*Q.* Who told you it was a receipt?

"*A.* Well, I supposed it was a receipt.

"*Q.* When did you first learn the amount of the money given you?

"*A.* After I got home.

" *Q.* At that time, was there any talk about this extra
$10 for the collecting ?

" *A.* No, sir; because I was in a hurry to get out of the
office, because I knew there was three men to one, and I
knew, if there was any trouble, he would probably get at
my neck; so I got out of the office as quick as I could."

The pay-day of the company was every other Monday.
Payments were not always made on those days, but the
record shows that, on an average, two checks payable to
the order of the plaintiff were each month delivered to the
plaintiff for his wages; that upon the face of each check,
above the signature of the maker of the check, were the
words, "in full for services to date." The plaintiff in-
dorsed these checks, and obtained the money upon them.
There were nearly 50 of the checks. When plaintiff quit
work, two checks, amounting to $166.07, payable to his
order, and reciting that they were in full for services to
date, were delivered to him; and at the same time he gave
a receipt to the defendant for the amount of the money
paid, stating it was in full for services to date. These
checks and receipts were offered in evidence, but no wit-
nesses were sworn by the defendant. On the cross-exam-
ination, the plaintiff testified he made two demands for the
extra compensation, once after the first check, and the
other time two, three, or four months later; that he
thought he made a demand when he gave the last receipt;
that he was then told that, if he did not sign the receipt,
he would not get a cent; that he then signed the receipt,
and the checks were delivered to him; that he took them
home, and afterwards had them cashed.

It is claimed now that plaintiff was forced into giving
the receipts; that they were given under duress; and that
there was a question to be submitted to the jury of the
amount due the plaintiff,—counsel citing *Vyne* v. *Glenn*,
41 Mich. 112; *McAllister* v. *Engle*, 52 Mich. 56; *Brooks*
v. *White*, 2 Metc. ( Mass.) 285 ( 37 Am. Dec. 95 ); *Fitch*
v. *Sutton*, 5 East, 230; *Hayes* v. *Insurance Co.*, 125 Ill.
626. These cases are not applicable to this case. The

case comes clearly within the reasoning of the case of *Tanner* v. *Merrill*, 108 Mich. 58, where there is so full and complete a discussion of the effect of giving receipts under such circumstances as surrounded the acceptance of the checks and the giving of the receipts in this case that it is not necessary to restate the law applicable to the case here. We do not think the court erred in his disposition of the case. See *Bartlett* v. *Railway Co.*, 82 Mich. 658.

Judgment is affirmed.

The other Justices concurred.