C. E. BEAVER, Appellee, v. ALFRED S. PORTER, Appellant.

**Accord and satisfaction:** GOOD FAITH DISPUTE: EVIDENCE. Where
1   there is a good faith dispute as to the amount due from one
party to another, the acceptance without objection of a state-
ment showing a less sum due than is claimed and of a check
therewith to balance the account, will amount in law to a com-
plete accord and satisfaction.   Evidence held sufficient to war-
rant a submission of the issue of a good faith dispute as to
amount due.

**New trial:** CONFLICTING INSTRUCTIONS. Although an instruction in
2   part and standing alone may be correct, yet when taken as a
whole if it injects an immaterial issue and one not suggested
by the pleadings or evidence, a new trial will be granted.

*Appeal   from   Dallas   District   Court.*— HON.   EDMUND
NICHOLS, Judge.

FRIDAY, NOVEMBER 17, 1905.

ACTION to recover a sum named, alleged to be due as
commissions earned in connection with a sale of real estate.
The trial was to a jury and there was verdict and judgment
in favor of plaintiff.   The defendant appeals.— *Reversed.*

*Charles L. Powell,* for appellant.

*White & Clarke,* for appellee.

BISHOP, J.— The petition is in two counts.   In the first
plaintiff alleges that in September, 1902, the defendant, a
resident of Minneapolis, Minn., and one C. A. Diehl, a resi-
dent of Des Moines employed J. E. Alpaugh and W. H.
Dinnell, real estate agents residing in Adel, Iowa, to act as
their agents to find purchasers for tracts of Canada land of
which they were owners; that the compensation agreed upon

for their services was thirty-five cents per acre on the acreage for which they found purchasers; that said agents found purchasers in one Gudgel, to whom there was sold 6,400 acres of said lands, and in one Hoy, to whom there was sold 2,815 acres. And it is said that of the agents' commission agreed upon there remains unpaid the sum of $2,496, and that the amount thus due was, on December 3, 1902, assigned to plaintiff. In the second count the allegations of the first count are repeated, save that instead of relying upon a contract amount the reasonable value of the services of Alpaugh and Dinnell is alleged to be the sum of fifty cents per acre. And the judgment demanded is the sum of $1,999. The answer presents a general denial to each count, and in addition it is pleaded that a full and complete settlement of all the matters now relied on for judgment was had before this action was commenced.

In the main, the facts are not involved in any serious controversy. It was made to appear on the trial that Dr. C. E. Diehl, Clarence A. Diehl, the defendant Porter, and some ten other persons were the beneficial owners of extensive tracts of land in the Northwest Territory, Canada, the title to all which was in Dr. Diehl as trustee. The extent of the interest held by any one of the persons does not appear. One of such tracts consisted of about 15,000 acres, and is spoken of in the record as the "hill lands"; a further tract some distance removed from the hill lands, is spoken of as the "bottom lands." Late in August, 1902, J. E. Alpaugh happened in Des Moines, and upon meeting Clarence Diehl, the latter proposed that he (Alpaugh) undertake to find a purchaser for the tract of hill land. The land was described to him generally, and a price was fixed at $4.50 per acre, with a commission fixed at thirty-five cents per acre. The bottom lands were spoken of, but no price was fixed. Alpaugh demurred on the ground that he had no funds to defray expenses, whereupon Diehl agreed to furnish funds and gave Alpaugh $25, and, as the latter puts it: "I went to work."

On August 27, 1902, Clarence Diehl wrote Alpaugh from Des Moines inclosing a plat of the hill land, and in the letter it is stated that such is the " 15,000-acre tract which I quoted you in a body at $4.50 per acre "; and further, " I think it could be resold this fall yet at an advance above the price I have been authorized to quote you." Alpaugh interested Beaver, the instant plaintiff, and one Dinnell in the deal, and it appears agreed to give them each one-fifth of the commissions. Clarence Diehl was advised that the assistance of such parties had been secured, and on August 30, 1902, he wrote Alpaugh that he would try and have Porter come down " and line up the people as soon as you are ready for him." In this letter Diehl declines to be responsible for the expenses of prospective purchasers who may be secured to go and see the land, and closes by saying: " Another contingency you must bear in mind is that it may become necessary to close with parties to cut the price to $4.25 per acre. This would still leave you a $1,500 commission." September 10, 1902, Diehl again wrote to Alpaugh stating that, after a conference with his brother, the doctor: " We decided to quote you the following on the other portions of our Canada lands: [Here follows a designation by numbers of different parcels of the bottom lands, and the prices quoted range from $5 net to $7 net per acre.]" Nothing was said in the letter on the subject of commissions.

About this time, Porter, who was then a real estate broker residing in Minneapolis, Minn., came upon the ground and interested himself with Alpaugh and the others in getting up a party of prospective purchasers to go to Canada and look at the land. Two men only, Gudgel and Hoy, each of whom was introduced by Alpaugh, were induced to go, and they were accompanied by Alpaugh, Dinnell, and Porter. Alpaugh testifies that before the start was made, at a meeting of the parties interested, Hoy remarked that they might not want to take the entire tract on the hill, in response to which Porter said that, if they did not take but 5,000 of the 15,000

acres, the same price per acre would govern. Alpaugh says he then asked Porter " if our commission on the 5,000 acre sale would be the same as on 15,000 acres, and he said let it go the same."

In his testimony, Porter denies the statement so attributed to him, and declares that before the trip he knew nothing of the terms on which Alpaugh and his associates were working. Before going, the talk with Gudgel and Hoy was principally about the hill tract of land, and it does not appear that either Alpaugh or his associates made particular presentation of the subject of the bottom lands, and certainly no prices on such lands were quoted. After inspection of the lands, Gudgel and Hoy each proposed to buy portions of the hill tract and of the bottom lands, but upon condition that the price should be uniform at $4.50 per acre. Porter declined to contract on such basis without direct authority from Dr. Diehl, and wired him for advice.

It is conceded that, while waiting for a reply, Porter told Alpaugh that, if a contract was made on the basis proposed by Gudgel and Hoy, he (Alpaugh) would have to submit to a cut on his commissions, and that the cut would be to about $1,000. Porter testifies that Alpaugh consented to this and suggested that he (Porter) go ahead and close the deal. Alpaugh, in his testimony, insists that he refused to submit to any cut. Upon advice from Dr. Diehl, Porter did contract to sell to Gudgel and Hoy the number of acres as in the petition stated, being in part hill lands and part bottom lands, at the flat price of $4.50 per acre. After his return, Alpaugh talked with Clarence Diehl about the commissions, and Diehl testifies that what the latter complained of was that Porter had sent him a statement of the commission account in which the sum total was stated as $838.42, and not $1,000 as Porter had promised; also that Porter had charged up too much for expenses. Diehl says that he answered Alpaugh that he would go over the matter with Porter and bring up the amount to as near $1,000 as possible.

Alpaugh admits that at the time of this conference he knew that Porter was claiming that he (Alpaugh) had not only agreed to a cut in his commissions, but that the deal had been closed with Hoy and Gudgel on the basis that there should be a reduction in the amount of the commissions. Alpaugh denies, however, that he gave Diehl to understand that he had in any way agreed to any reduction, but admits that Diehl said he would take the matter up with Porter, and would get the amount brought up as near $1,000 as he could. All agree that thereafter Diehl wrote Alpaugh advising him of the disposition of an attachment proceeding pending as against the latter and under which Diehl had been garnished, and closing thus: " Herewith hand you statement of your commission account with check for $335.42 to balance the same." The statement inclosed was in substance as follows: " Total com. due Alpaugh as per statement rendered by Porter $832.42, less expenses as follows: [Here follows a statement of moneys paid Alpaugh by Porter, and expenses of trip.] $247.00. Amount due agent, $585.42." The statement is then continued by Diehl as follows: " Have altered the above after consultation with Porter to the extent of making amount due you now appear at $685,42, or an additional allowance of $100. This, less personal advances [made by Diehl], is as follows: By total credit $685.42. [Then follows the items of advancements amounting to $350.] To cash in full account, $335.42." With the statement, Diehl inclosed a check on the Des Moines National Bank for $335.42. The statement and check were confessedly received by Alpaugh, and he assigned the check to the instant plaintiff who presented the same for and received payment of the amount thereof from the bank. This was on December 4, 1902, and Alpaugh admits that he made no complaints in respect of the matter either to Diehl or Porter except by way of commencement of this suit through Beaver, which was on December 15, 1902.

Upon its own motion the court gave to the jury an instruction as follows:

To constitute an accord and satisfaction, where there is a *bona fide* dispute, it is necessary that the money should be offered in satisfaction of the claim, and the offer accompanied with such acts and declarations as amount to the condition that, if the money is accepted, it is accepted in satisfaction, and such that the party to whom it is offered is bound to understand therefrom that, if he takes it, he takes it subject to such conditions. A party to whom an offer is thus made has no alternative but to refuse it or to accept it upon such conditions, and if he takes it his claim is canceled.

This was followed by an independent paragraph of the same instruction in which the court attempted a change to the concrete and proceeded to tell the jury that:

If you find that there was a genuine dispute between the plaintiff and his assignors and the said defendant as to the amount of commissions due said agents for the sale of said lands to Gudgel and Hoy, and you further find that C. A. Diehl, acting for the defendant, sent to the said Alpaugh a check for $335.42, and that such check was offered to said Alpaugh in satisfaction of the claim for commissions and on condition that it should be accepted in payment of the amount due, and you find that the said Alpaugh knew, or under the circumstances should have known, that it was offered only on such condition, and you find that said Beaver, Dinnell, and Alpaugh were partners, or that Beaver and Dinnell looked to said Alpaugh for their share of said commissions, and you find that said Alpaugh received, indorsed, and transferred said check, then by so indorsing the same he accepted it and agreed to the compromise which it was tendered to effect. If you so find, your verdict should be for the defendant.

And in a further instruction the jury was told in substance that if they found that plaintiff, Alpaugh, and Dinnell were not partners in the deal, but were interested as individ-

uals, and such fact was known to Diehl, then no settlement
with Alpaugh could affect the right of Dinnell and Beaver,
unless assented to by them, or " unless you find that said
Dinnell and Beaver agreed to look to Alpaugh alone for their
share of the commissions." Attempting further to deal con-
cretely with the subject of settlement, the court gave to the
jury this instruction:

If you find from the evidence that there was a dispute,
in good faith, between Porter and Alpaugh as to the amount
of commissions due said agent or agents for the sale of said
real estate to Gudgel and Hoy, such dispute might be legally
the matter of compromise and settlement between said parties,
and the payment of a smaller sum than the sum actually
due might operate as a satisfaction of the amount due, if
such compromise and settlement was agreed upon and the
sum paid was tendered on the condition that it should be
received, if accepted, in full settlement, and the same was
so received. And in this case, if you find that prior to
December 4, 1902, there was a disagreement in good faith
between the said agents and the said Porter, or said Diehl,
as to the amount due as commissions, and that thereupon
said parties agreed to pay a certain sum which the said agents
agreed to accept, and that in pursuance of such agreement
said Diehl did, on December 4, 1902, send a check to said
Alpaugh for the amount then due under the agreement of
settlement, and that said Alpaugh indorsed and transferred
said check to another by whom it was collected, and you
further find that said check was tendered and received with
the intention on the part of said Diehl and the said agents
that it should operate as a full settlement and satisfaction
of said claim, then there was a full accord and satisfaction
thereof, and plaintiff cannot recover.

As we think, the situation as presented by our state-
ment foregoing — and we need not attempt an analysis in
1. ACCORD AND    detail — makes it clear that there was sufficient
SATISFACTION:
good faith      upon which to submit to the jury the question
dispute:
evidence.       as to the existence of a good faith dispute re-
specting the amount of the commissions due. And this, of

course, was the view taken by the trial court. And the question being answered in the affirmative, it would follow as a necessary corollary that there was a basis for a valid and enforceable agreement of settlement. Now, within our view,, if agreement of settlement there was, it arose impliedly out of the acceptance by Alpaugh of the statement of account and check sent to him, and the appropriation by him of the latter to his own use, and not otherwise. And if there was a good faith dispute as to the amount due, it is true by weight of authority that the acceptance of the statement and check would amout in law to a complete accord and satisfaction. See the cases collected in 1 Cyc. 333, note, among which arc the following: *Ostrander v. Scott,* 161 Ill. 339 (43 N. E. Rep. 1089); *Golden v. Bartlett, L. Co.,* 114 Mich. 625 (72 N. W. Rep. 622); *Eames, etc., Co. v. Prosser,* 157 N. Y. 289 (51 N. 9. Rep. 986); *Washington, etc., Co. v. Johnson,* 123 Pa. 576 (16 Atl. Rep. 799, 10 Am. St. Rep. 553); *Hull v. Johnson,* 22 R. I. 66 (46 Atl. Rep. 182).

Such being the case, there was but one question demanding an answer, and that was as to the existence of a good faith dispute; and the jury should have been so instructed. The initial paragraph of the first

**2. NEW TRIAL:** conflicting instructions.

instruction set out by us above is not criticised because of any error in the abstract rule presented. And perhaps if such were all we should not be inclined to interfere. But the succeeding paragraph, and the further instruction following, which the jury might readily accept as an attempt to make application in the concrete of the abstract rule above expressed, makes the whole question of settlement in its last analysis depend upon the relations as found to exist between plaintiff, Alpaugh, and Dinnell. In view of the record, it is manifest that this was error. As we read, there is not a suggestion in the pleading or evidence that plaintiff, Alpaugh, and Dinnell were acting together as partners; and, conceding — because it is not disputed in argument — that contract relations existed between

defendant and Alpaugh, still there is not a suggestion anywhere of any contract relation between defendant and either plaintiff or Dinnell.  The only agreement made was between Clarence Diehl and Alpaugh, and plaintiff and Dinnell came in only to assist Alpaugh upon his request and promise to share his commission with them.

There was then no partnership question to submit to the jury respecting the relations between such parties.  Moreover, plaintiff does not claim to have been employed in any way by or on behalf of plaintiff; he sues as the assignee of Alpaugh and Dinnell, and, in any event, he was bound by what was done by Alpaugh before the latter executed and delivered the assignment upon which plaintiff bases his right to sue.  The instruction last above quoted ignores the relations between plaintiff, Alpaugh, and Dinnell as having any controlling effect upon the situation, and, conversely stated, makes an effective settlement depend wholly upon whether a previous agreement in terms was reached, pursuant to which, and in strict fulfillment, the check was sent, received, and accepted.

The conclusion is irresistible that the instructions must be condemned, because conflicting, because they were calculated to carry confusion into the jury box, and because they presented matters for the determination of the jury which had no place in the record.  All the books agree that under such circumstances there must be a new trial.  Other errors argued need not be discussed, as they are not likely to again arise.  A new trial is ordered, and the case is remanded for that purpose.— *Reversed.*