W. H. SCHULTZ, Appellant, v. FARMERS ELEVATOR COMPANY, Appellee.

**ACCORD AND SATISFACTION:** Part Payment—Unliquidated
1 **Claim—Acceptance of Check—Effect.** In the case of an honest dispute as to the correct amount of an unliquidated claim, an accord and satisfaction results from the act of the debtor in giving, and the creditor in taking and cashing, though reluctantly, a check for a smaller amount than the creditor had been contending for, even though the debtor, when he gave the check, did not actually say by word of mouth that he intended the check to be in full settlement, the creditor knowing, expressly, or impliedly from the circumstances, that such was the intention of the debtor.

PRINCIPLE APPLIED: Plaintiff, having sold an admitted

quantity of corn to defendant, called upon defendant, not for any mere payment on the account, but *to get his money*. Defendant figured the corn at 59 cents a bushel and handed plaintiff a check for the amount due on that basis. An animated dispute thereupon arose over the price. Plaintiff contended that defendant's sole agreement was to pay 73 cents a bushel for the corn. Defendant contended that his sole agreement was to pay 73 cents a bushel *if* the corn graded No. 3; otherwise, to pay the actual receipts realized on the shipment, less a small commission for handling, and that the corn did not grade No. 3, and that 59 cents was the amount realized after deducting the commission. Plaintiff demanded more money, and defendant refused. Plaintiff, much dissatisfied, finally went to the bank and, being urgently in need of money, cashed the check and always thereafter retained the money. Several days after cashing the check, he called upon defendant and demanded more money. Whether the word ''settlement'' or its equivalent was used at any time during the controversy was in dispute. Plaintiff sued for the claimed balance. The court directed a verdict against him on the theory of accord and satisfaction. *Held*, correct.

**ACCORD AND SATISFACTION: Unliquidated Claims—What Constitutes.** A claim is unliquidated whenever it appears:

    1. That a bona fide dispute exists as to the correct amount, or·

    2. When it is admitted that one of two sums is due, but a bona fide dispute exists as to which is the correct amount.

*Appeal from Marshall District Court.*—B. F. CUMMINGS, Judge.

SATURDAY, MARCH 11, 1916.

ACTION at law to recover on an oral contract for the sale of 778 bushels of shelled corn, at 73 cents a bushel. Trial to a jury and, at the close of the testimony, the court sustained a motion to direct a verdict for the defendant, and the plaintiff appeals.—*Affirmed.*

*Bradford & Johnson,* for appellant.

*F. E. Northup and Binford & Farber,* for appellee.

PRESTON, J.—Plaintiff claims he sold defendant 778 bushels and 2 pounds of shelled corn at the agreed price of 73 cents a bushel, making a total of $567.96, on which he had

been paid $459.02, leaving as due him $108.94, and the suit is to recover this balance. The delivery of that many bushels of shelled corn is admitted by defendant, but its claim is that the corn was to grade No. 3, and it admits that it was to pay 73 cents a bushel if it did so grade. Defendant claims, also, that, if the corn would not grade No. 3, then it was to handle the corn for terminal price, less 8 cents for handling. Plaintiff denies that he sold the corn to grade No. 3, and denies that defendant said that if it did not grade No. 3, it would ship and give him what it graded. As a separate defense, defendant pleaded that the matter of dispute as to the value and price of the corn claimed to have been sold by plaintiff to defendant arose after the shipment thereof to St. Louis, Missouri, which was the market destination of said corn, and that it was subject to inspection, and that, upon inspection, the corn was of no grade and was not corn of the kind and quality the plaintiff represented and pretended he owned and desired to sell, but that, on the contrary, it was spoiled and damaged corn, and that defendant was liable to plaintiff only for the market value of no grade corn; that defendant settled and adjusted said matter of dispute with the plaintiff by compromise, and paid to plaintiff by check the sum and amount to which plaintiff was justly entitled; and that plaintiff accepted said check in full settlement and caused the same to be cashed and received, and used the proceeds thereof; and that there has been an accord and satisfaction.

The motion to direct a verdict was upon five grounds:

1. That the plaintiff has failed to sustain the material averments of his petition.

2. That plaintiff has pleaded a sale of specific property at a given price, and no proof of such sale or that any price was fixed has been introduced.

3. That plaintiff seeks to recover on an account or a contract for the sale of certain corn at a certain price, and that the proof fails to support such claim, and shows that he is entitled to recover, if at all, upon a *quantum meruit*.

4. That the only proof of any contract is that set up by the defendant in its answer, and that such contract has been fully complied with.

5. That there has been a settlement and accord and satisfaction.

The record shows that the motion was sustained generally.

1. The issue as to whether, under the undisputed evidence, there was an accord and satisfaction will be first taken up and disposed of. We are of opinion that the undisputed evidence shows that there was an accord and satisfaction and that the motion was properly sustained upon this ground, if no other. It will be necessary to refer as briefly as may be to the testimony.

1. ACCORD AND SATISFACTION: part payment: unliquidated claim: acceptance of check: effect.

Plaintiff testifies that he sold the corn to a Mr. Stewart, an officer of the defendant company, at 73 cents a bushel. He says further:

"I went to the elevator to get my money some time after I delivered the last load, and saw Mr. Stewart and told him I would like to get my money for the corn. He figured it out and handed me a check. I told him it wasn't quite enough, and asked him what he figured the corn at, and he said 59 cents. I told him it was not right and told him I wanted more money."

He says Stewart did not tell him why he figured the corn at 59 cents and did not tell him that the corn had been spoiled, and denies that he sold the corn as No. 3 corn.

"He told me how many bushels and figured it up, 778 bushels and 2 pounds, at 59 cents per bushel. I told him I took the money *because I had a note to pay,* and told him I was not satisfied, and if it was not for that, I would not have taken it. I took the check and went to the bank and got my money. The amount of the check was $459.02. I got the money two or three weeks after I delivered the corn. About a week after I got the check, I saw Mr. Clark; Clark did not

tell me it had been inspected by the Government Inspector at St. Louis and was damaged. He said it was damaged and that was the reason he figured it at 59 cents a bushel; he told me that was the returns that he got from the people of St. Louis to whom he had shipped; he did not tell me at that time that that was the way they settled with their customers for that kind of corn. I figured with Stewart, but went to see Clark afterwards; Clark was manager of the defendant company. I did not tell him that would be a settlement of it; I did not say anything. My corn was not damaged.''

This is the substance of plaintiff's testimony upon this point. Stewart, president of the defendant company, says that plaintiff wanted his money for the corn; that when he wrote the check, witness told plaintiff it did not figure as much as plaintiff expected, and plaintiff did not like it. He says:

''When he came to settle, he wanted his money for his corn. I looked in the book and saw how much it was figured. Mr. Clark had put the price on. I figured from that price, 59 cents per bushel. I told him it was not good corn. It was rejected corn, and he thought he had good corn and insisted on my taking it for 73 cents without grade. I wouldn't buy it that way; and he didn't have anything more to say at that time, but accepted his check and went off. About three days after that, he came back and said he was not satisfied with his settlement and wanted more money. I told him we was paying so much for grade corn. He didn't want to sell his corn that way, and I told him I couldn't do any different with him than others. He said he had No. 3 corn, and I told him if he had 3 corn he would get his 73 cents; if he didn't, he wouldn't. I told him we could not pay him 73 cents for the corn unless it was graded at the terminal, and if they graded it at that, he could have 73 cents, and if not, we didn't know what he was going to get; and he sold me his corn on them terms. Mr. Clark handled and shipped the corn and got the

returns.  All I did after that was to figure his check from
Mr. Clark's figures on the book, what he was to have; and he
accepted his check and got it and went off.  Afterwards, he
came back and said he was not satisfied with the settlement.
When I gave him the check, he did not say he would not
accept it.''

Clark says:

''I received the Schultz corn myself and examined it.  It
started good, the first load, but as it came along, it got tough,
carried considerable moisture, and there was some rotted
corn with it.  It was shelled corn, and there were 16 loads.
The 16 loads would not grade up to No. 3.  We shipped it in
two days.  We got 67 cents per bushel for the corn, less
freight and commissions.  The amount we received was 59
cents.  When Schultz came back, I told him the corn did
not grade, and he said he did not sell the corn to grade.  I
told him it was so reported to me.''

There is other evidence as to the character and quality
of corn.  Plaintiff denies that he used the word ''settlement''
when he came back after having cashed his check, and, as
stated, denies the terms of the contract and that it was to be
grade corn, and the manner of settlement for spoiled corn,
as claimed by defendant.

From this evidence, it is very clear that there was a
dispute between the parties as to the terms of the contract
and as to whether the corn was No. 3 or spoiled, and, as
stated, there may be some conflict in the testimony as to
whether the word ''settlement'' was used, after plaintiff had
cashed his check and had come back in a few days to see the
officers of the defendant company.  But we are satisfied, from
a reading of this entire record, that, some time after the corn
was delivered, plaintiff went to defendant to settle and get
his money for the corn.  He says as much himself, and there
is no claim or pretense that he went to them to get only a
partial payment for the corn.  There is no dispute between

them as to the number of bushels, but the corn was figured at 59 cents instead of .73. Plaintiff was dissatisfied and so stated, and objected to the amount and objected at first to taking the check, but finally says he took it because he needed it to pay a note, or that in substance. He did take it, cashed the check and has kept the money ever since, and is now seeking to recover the difference on this disputed claim, without any tender or offer to return the money. As stated, there may be some dispute in the testimony as to whether the word "settle" or "settlement" or "full settlement" was used. Some of the testimony is that he took the check and said nothing. It is true, of course, that the minds of the parties must have met on the proposition, but it is not necessary that the word "settle" or "settlement" should have been used; and, even though plaintiff claims that the word "settlement" was not used, or even if he says there was no settlement, that is not conclusive, because the question is: What was the effect of what he did say and what he did? As already stated, the evidence shows conclusively that he went to defendants to obtain a settlement for his corn. There was a dispute as to the amount due. Defendants say they paid him the amount of the check in settlement of his claim, and plaintiff took the check and used the money. We are of opinion that, under the record, there was a settlement and a complete accord and satisfaction. As said, the minds of the parties must have met on the proposition that the check was in satisfaction of the entire claim. This may be shown by the circumstances. We have held that the acceptance of part payment, without any agreement that it shall be in satisfaction of the entire claim, does not constitute an accord and satisfaction, and the creditor may sue for the balance. *Rustler Realty Co. v. Swecker,* 134 Iowa 679. But the rule is that, where there is a good-faith dispute as to the amount due from one party to another, the acceptance, without objection, of a statement showing a smaller sum due than is claimed, and of a check for the balance

of account thus shown, will amount in law to a complete accord and satisfaction. *Beaver v. Porter*, 129 Iowa 41.

In *Mains v. Mintle*, 86 Iowa 742, it was held that, where there was a breach of contract to deliver corn and a subsequent demand of a settlement for the amount delivered, and payment of a sum was made, the party paying at the same time protesting that he was not satisfied with the action of the opposite party in not complying with the contract, such settlement constituted an accord and satisfaction for all claims of breach of contract.

In *Sparks v. Spaulding*, 158 Iowa 491, it was held that, where there was a dispute in good faith as to the amount due on an unliquidated claim, and defendant offered plaintiff a check in full satisfaction, and the plaintiff cashed it with full knowledge that it was tendered in full payment, it constituted an accord and satisfaction. In that case, it was held that whether there was a payment or an accord and satisfaction is primarily a question of fact for the jury; but these may become questions of mixed law and fact for the court, such as to require the direction of a verdict.

As bearing further upon this question, see the case of *Ferguson v. Grand Lodge of Iowa Legion of Honor*, 174 Iowa 61, and the cases therein cited; also, 1 Corpus Juris, p. 557, where it is said that "the nature of the offer or tender by the debtor is an important consideration in determining whether there has been an acceptance and satisfaction."

It is not absolutely necessary, in order that an accord and satisfaction may arise, for the debtor to declare expressly, in connection with his tender, that it is meant to be in full payment; for circumstances may show as conclusively as language that this was meant, and that the parties so understood the matter. There must be a meeting of the minds, and it must be shown that the creditor understood, or should have understood, that he was abating his claim when he received the consideration for the settlement. 1 R. C. L. 183.

We do not understand appellant to contend that his demand was unliquidated. The claim is unliquidated if there is a bona fide dispute. *Wherley v. Rowe,* (Minn.) 119 N. W. 222; *Fire Ins. Assn. v. Wickham,* 141 U. S. 564. If it is admitted that one of two sums is due, but there is a dispute as to which is the proper amount, the demand is unliquidated within the meaning of accord and satisfaction. *Greenlee v. Mosnat,* 116 Iowa 535; *Sparks v. Spaulding, supra;* 1 Cyc. 335.

2. ACCORD AND SATISFACTION: unliquidated claims: what constitutes.

It is our conclusion that there was an accord and satisfaction, and, this being so, it is unnecessary to consider the other points argued. The judgment is—*Affirmed.*

EVANS, C. J., DEEMER and WEAVER, JJ., concur.