OF

## THE STATE OF IOWA

AT

## DES MOINES, JANUARY TERM, A. D. 1897,

AND IN THE FIFTY-FIRST YEAR OF THE STATE.

---

BENTLEY & OLMSTEAD, Appellants, v. SNYDER & SON, J. H. SNYDER, and L. F. SNYDER, Appellants, and JCSEPH SAMUELS, LYDIA COWLES, P. G. COWLES, ANNA GOY, and SARAH SAMUELS, Appellees.*

| 101 | 1 |
| 102 | 37 |
| 101 | 1 |
| 113 | 597 |
| 101 | 1 |
| 115 | 418 |

**Conditional Sale:** BAILMENT—AGENCY. Goods were sold and delivered by an administrator, on condition that title should remain in the seller until all payments were made. The buyer treated the stock as his own. He bought goods and added them to the stock. He bought them of one who knew that he owed largely, but who thought him conservative. Being unable to make the payments, he returned the stock to the administrator. It is not clear that the goods purchased were included in the stock turned back. No fraud is charged. *Held:*

*The figures on the left of the syllabi refer to corresponding figures placed on the margin of the case at the place where the ponit of the syllabusis decided.

a. Neither the administrator nor the estate are liable for said goods purchased.

b. Their seller cannot follow them or their proceeds, as a trust fund.

*Appeal from Fremont District Court.*—HON. WALTER I. SMITH, Judge.

WEDNESDAY, JANUARY 27, 1897.

ACTION at law, to recover from Snyder & Son and J. H. Snyder and L. F. Snyder, the amount of a certain promissory note, executed by them to plaintiffs, on or about July 10, 1894. In a second count of the petition the plaintiffs alleged, that the other defendants, in consideration of having received a stock of goods from Snyder & Son, promised and agreed to pay the note; and in a still further and third count of their petition they alleged, in substance, that Snyder & Son were agents and factors for the other defendants, having received certain goods from them for sale on commission, and that they continued to be such agents until August 23, 1894; that during the existence of such relation, and without notice or knowledge thereof, plaintiffs sold and delivered certain goods and merchandise, for which the note in suit was given; that at the time they sold their goods they believed that Snyder & Son were the owners of the stock of merchandise which was then in their possession, and were so informed by the defendant, Joseph Samuels; that the goods so purchased went to the benefit of defendant, Joseph Samuels; that Joseph Samuels, on or about the twenty-ninth day of August, 1894, took possession of the goods which he had intrusted to Snyder & Son, with all additions which had been made thereto, and that he has since disposed of the same, retaining the proceeds thereof; that, before disposing of the stock, Samuels had knowledge

·of the fact that plaintiffs' goods had been added to the stock while Snyder & Son held it. It is also alleged, that in all these matters defendant Samuels was acting for and on behalf of the heirs of Giles Cowles, deceased, of which he was one, and the other defendants, save the Snyders, were the others. The plaintiffs prayed for judgment against all defendants for the amount of their account or note; that Samuels be required to render an account of all property coming into his hands from the Snyders; and that the cause be transferred to the equity docket for trial. The defendants Snyder & Son, and the Snyders, individually, answered, and in their pleading practically admitted the claims made by plaintiffs. The other defendants filed a general denial. Plaintiffs' motion to transfer to the equity docket was overruled, and the case was submitted to a jury, resulting in a verdict and judgments for the defendants, other than the Snyders, and for the plaintiffs against the Snyders, for the amount of their note. Plaintiffs and Snyder & Son appeal.—*Affirmed.*

*Ayres, Woodin & Ayers* and *W. E. Mitchell* for appellants Bentley & Olmstead.

*G. B. Jennings* for appellants Snyder & Son.

*Geo. E. Draper* and *C. S. Keenan* for appellees.

· Deemer, J.—Giles Cowles died, owning a certain stock of merchandise in the town of Riverton, Fremont county, Iowa. The defendant Joseph Samuels was appointed his executor, and as such, with the approval of the district court of Fremont county, he entered into the following contract with J. H. Snyder, L. F. Snyder, and J. E. Eubank: "This agreement witnesseth that Joe Samuels, administrator of Giles Cowles' estate, has sold or assigned

on commission all the merchandise in building on lot No. 825, Riverton, Iowa, that belongs to Giles Cowles' estate, to J. H. and L. F. Snyder and J. E. Eubank. And this agreement further stipulates that when four thousand dollars has been paid to Joe Samuels, admin- intrator, then said Joe Samuels, administratrator, shall give to the said J. H. and L. F. Snyder and J. E. Eubank a bill of sale to all the property above described. There shall be paid to Joe Samuels, administrator, each month at least, a per cent. of sales. Should any part of the above named four thousand dollars remain unpaid at the expiration of one year from date of this instrument, then shall bear eight per cent. from August 25, 1892, for a period not to exceed five years from that date. It is expressly stipulated and understood that the ownership of the merchandise above referred to, and all the additions thereto, shall remain in Joe Samuels, administrator, until the sum of four thousand dollars has been fully paid, with interest as above provided. Witness our signatures this twenty-fifth day of August, 1891. Joe Samuels, Administrator. J. H. Snyder, L. F. Snyder, J. E. Eubank." The Snyders and Eubank took posses- sion of the stock of goods under this contract, and continued to deal with the same as if they were the owners thereof until they surrendered it to Sam- uels in August, 1894. Eubank, however, withdrew from the business about sixteen months after the con- tract was executed, and the Snyders thereafter con- ducted the same under the name and style of Snyder & Son. During the time they were in possession of the stock they purchased the goods for the price of which this action was brought. Before selling any of the goods to Snyder & Son, plaintiff's travel- ing salesman called upon Samuels, with whom he was acquainted, and asked him regarding their financial standing. He says that at this time

he knew that the Snyders had purchased the stock through Samuels, and that Samuels told him that they had bought it "on payments," and that they owed considerable on the stock. "He also said that he thought the old gentleman was very conservative, and would pay for all the goods they needed, and that he thought we [plaintiffs] would be safe in shipping them small amounts." Snyder & Son continued in possession of the Cowles stock until August, 1894, at which time they concluded that they could not meet their obligation therefor, and they proposed to surrender it to the Cowles heirs in payment of what remained due. At this time they had paid one thousand five hundred dollars of the purchase price, leaving a balance due, including interest, of two thousand nine hundred dollars. Plaintiffs claim, and they introduced evidence to show, that, at the time of the surrender of the stock, Samuels and the other Cowles heirs promised and agreed to pay all the outstanding indebtedness of Snyder & Son, but this is squarely denied by appellees. The case went to the jury on the single proposition as to whether or not there was such an agreement, and they found in favor of appellees.

Appellants now present two questions for our consideration. One is, that by the contract, which we have heretofore set out, Snyder & Son became agents, factors, or commission merchants for the Cowles heirs, and as such they were authorized to purchase goods for these heirs, and bind them for the purchase price; the other that, under the circumstances disclosed, Snyder & Son were trustees for plaintiffs of the goods ordered by them, and held the same, or the proceeds thereof, in trust for their benefit; that Samuels and the Cowles heirs took possession of the stock transferred to Snyder & Son, with knowledge of this trust relation, and are

liable in equity for the value of the goods sold and delivered by plaintiffs to Snyder & Son.

The first question presented involves a construction of the contract between Samuels and the Snyders. Appellant contends that it is a contract of bailment, while appellees say it is one of conditional sale. That there is a manifest distinction between delivery under bailment, with an option to purchase at a stated price, and a delivery under a contract of sale containing a reservation of ownership in the seller until the contract price is paid, is conceded; and the most infallible test by which to determine under which class the contract falls, is to ascertain whether there is a promise by the purchaser to pay for the goods delivered. If there is such promise, then, no matter under what form the transaction is disguised, it is held to be a conditional sale, and not a bailment. The language of the contract we are now considering is ambiguous and uncertain, but when construed with reference to the conduct and situation of the parties, in the interpretation they place upon it themselves, we think it clear that the transaction was intended as a conditional sale, and that Snyder & Son did agree to pay four thousand dollars for the stock of goods at the time named in the contract. But if we are not correct in this, and the contract should be found to be one of bailment, and not of sale, yet in such case Snyder & Son would sustain the relation of factors, or commission men, towards Samuels and the Cowles, with power to sell the goods intrusted to them, but without express authority to purchase goods in the name of their principals. A factor or commission man ordinarily has no other authority than to receive and sell the goods of his principal. In this respect he is a general agent. But he has no power to buy other goods on the credit of his principal, unless expressly authorized, or given the apparent authority to do so.

In the case at bar, there was no such authority conferred by the contract, nor could such a delegation of power be reasonably inferred. It was, no doubt, contemplated that additions should be made to the stock, but whether by the Cowles heirs or by the Snyders, does not clearly appear. In any event, however, there was no thought that these additions should be made upon the credit of the bailors or vendors. It seems quite clear that plaintiffs did not so understand it. They knew that the goods had either been sold or bailed to the Snyders by the Cowles heirs, and their inquiries of Samuels with reference to Snyder & Son, clearly indicate that they did not extend any credit to Samuels, or to the parties whom he represented. True it is that, if the Cowles heirs or Samuels were, in fact, principals, the appellants might recover, although the relation of the parties was not disclosed at the time the sale was made. But to recover on such a theory it must be shown that the relation of principal and agent in fact existed. Mere implied, or apparent authority would not be sufficient in such a case to charge the Cowles heirs, or Samuels. These propositions are so elementary as to need no citation of authorities in their support. But see Mechem, Ag., sections 986, 1046, 1047. As we have already seen, neither Samuels nor the Snyders understood that the relation of principal and agent existed between them. The Snyders at no time, at least not until the bringing of this suit, claimed that they had authority to buy goods on the credit of the Cowles heirs, and the appellants' contention is based wholly upon the terms of the written contract, to which we have referred. If this created a contract of agency, it gave to the promisees no other authority than to sell the goods intrusted to their care, and account for the proceeds. It ought not to be seriously contended that this furnished the foundation for charging their principals

with other goods purchased by them. The very terms of the contract itself negative any such an idea.

II. The next contention of appellants is that some kind of a trust arose in their favor out of the circumstances disclosed, and that they are entitled to follow their goods, or the proceeds thereof, into the hands of the Cowles heirs; and that the court erred in not sustaining their motion to transfer the case to the equity docket for trial. The plaintiffs sold the goods and extended the credit to Snyder & Son after they knew that the firm had purchased the stock from Samuels, or had taken it upon commission, with full knowledge that they owed largely for the stock, but upon the belief that they were conservative, and would pay for small purchases of goods. It was the ordinary case of a sale and delivery upon credit. This alone will not create a trust in or lien upon the goods. If plaintiffs had no such right in or to them, it matters not whether the Cowles heirs received them back with knowledge of plaintiffs' claim or not, provided, of course, they did not take them fraudulently. Plaintiffs do not claim that there was any fraud in the transaction, and it seems clear that there is no element of trust in it. But if it should be assumed that there was a trust in the goods, or the proceeds thereof, sold by plaintiffs to Snyder & Son, it does not follow that plaintiffs would be entitled to enforce this trust against the Cowles heirs. It is not shown that they received the goods or the proceeds thereof, and to hold them it is necessary to follow the property or the proceeds thereof into their hands. This the evidence fails to do, and plaintiffs are not entitled to recover on this theory of the case.

We have already said that the jury found against appellants upon the only real issue of fact. Of this they cannot well complain, for the evidence was in

conflict, and the verdict has sufficient in its support. There is no error in the instructions given by the court, and its judgment is AFFIRMED.