A. F. MUNN, Appellant, v. TOWN OF DRAKESVILLE, Appellee.

No. 44066.

MAY 2, 1939.

Heinrich C. Taylor and W. W. Rankin, for appellant.

W. R. Fimmen and Buell McCash, for appellee.

HALE, J.—This is an action which was commenced August 28, 1933, by A. F. Munn, plaintiff, against the town of Drakesville, Iowa, in which he endeavored to recover upon an alleged contract dated October 4, 1926, for services rendered in furnishing electric lights to the streets of the town from March 1, 1929, to August 31, 1933. The case was brought on for trial in 1936 at the September term of the Davis county court, and assigned for trial on September 30. After the jury was impaneled and on the next day, an amendment was filed to plaintiff's petition, without leave of court, increasing the amount demanded to the sum of $2,982.75.

The original action was on a contract, and the amendment thereto was on quantum meruit and increased the amount claimed to be due on contract. On motion the court struck out the amendment. This action of the court is one of the grounds of plaintiff's complaint.

I. The plaintiff assigns as error this ruling of the court. We are satisfied that the court was justified in this ruling. The record shows that the petition had been on file for practically three years, that the pleadings were made up, that the jury had been impaneled and all parties were apparently ready to proceed with the trial. The objection made to the filing of count II of plaintiff's petition seemed to the court to be valid. It would have been unjust to the defendant to have had the cause continued, and it was not in position to ask for a continuance. Witnesses were in attendance, and it appeared to the court that their attendance at another time would have been

not only difficult to secure, but also uncertain. The amendment was filed without leave of court, and to meet the claim made in such amendment would have necessitated other testimony. We think the court properly exercised its discretion in refusing the amendment at so late a period in the trial. The granting or refusing of such a privilege is generally considered to be within the sound judicial discretion of the court. Code of Iowa, 1935, sections 11182, 11140. The ruling of the court on permission or refusal to amend will not be disturbed on appeal without a showing of abuse of discretion. McKeown v. McKeown, 220 Iowa 791, 263 N. W. 266; Cary-Platt v. Iowa Elec. Co., 207 Iowa 1052, 224 N. W. 89, and cases cited. We think the court was right in striking the entire amendment for the reasons above given.

The answer of defendant admits the signing of the instrument, copy of which is attached to plaintiff's petition, but alleges that it is invalid, that the defendant corporation had no power to enter into a contract of the nature pleaded; further alleges that the rate was reduced after the signing of the instrument and that a controversy arose between the plaintiff and defendant, and about October 14, 1929, a compromise settlement was effected. The answer pleads accord and satisfaction, and that plaintiff is estopped to bring this action.

At the close of all the testimony defendant filed a motion for a directed verdict, on various grounds, including insufficiency of evidence; that no action could be maintained on the alleged contract on account of lack of legal authority of the town to enter into a contract; because such contract was prohibited by law; because not enforceable for want of mutuality; and on the further ground that the evidence showed a resolution by the town for the termination of the contract, and that an accord and satisfaction was entered into between the parties on October 14, 1929, showing payment in full to said A. F. Munn, and a new agreement for lights supplanting and abrogating the old agreement.

This motion for directed verdict was sustained by the court, and from this action of the court the plaintiff appeals.

II. The validity of the ordinance adopted in 1922 has been discussed quite fully by the parties to this proceeding. The contract which was entered into after the franchise on October 4, 1926, provided for lighting the streets for "a term of

fifteen years at $2.00 per bulb, with lights not less than twelve,'' and other provisions as to breakage and for the time when lights should be in operation.

Many authorities are cited and a great deal of space is consumed on the question of whether or not the town could enter into such a contract as is here referred to. We do not think it necessary for the purposes of this case to review the authorities cited on both sides, or to consider the validity of the ordinance and the contract, which, to say the least, is doubtful.

The facts, so far as they are essential to this opinion and can be gathered from the abstract and amended abstract in this proceeding, show that in 1922 one A. F. Munn was the proprietor of a garage in the town of Drakesville (an incorporated town), and had been for some time operating a small electric light plant. In 1921 the electors of the town voted to authorize the town council to grant a franchise to said Munn, and in the spring of 1922 an ordinance (No. 45) was passed granting such franchise. Some four years after this ordinance was passed an arrangement was made between the plaintiff and the officers of the defendant, by a written instrument in the form of a contract, for the lighting of the streets of the town by not less than twelve street lights, at the rate of $2 per month per light, and also such incidental charges as might be necessary for the replacement of bulbs, etc. From the time of the execution of such agreement until February 1929, the streets were lighted by the plaintiff under the agreement mentioned.

In 1929 the plaintiff cut his rates to private consumers 60 percent, and the council of the defendant town then demanded that its rates be also cut. There was some disagreement between the plaintiff and defendant's officers, and the bills of the plaintiff were refused by the council. On March 4, 1929, a resolution was adopted by the council which was, in substance, that the former council could not bind the present council, and that Munn having reduced his rates for electric lights to private consumers, the council demanded the same rate reduction for lights used for street lighting in the town, and in such resolution the council agreed to pay the reduced rate during the life of the existing council; and in the event that plaintiff or his company did not accept the agreement, he was notified to discontinue the street lights. A copy of this resolution was given to the plaintiff. No acceptance or formal declination was given

by the plaintiff to the defendant, but plaintiff continued to present his bills for street lighting at the old rate, which bills were rejected. In May the council refused to allow a bill at the former rate (although allowing bills for breakage of bulbs) and plaintiff was notified by the mayor, pursuant to order of the council on May 6, to discontinue the service. On June 3 the plaintiff again tendered a bill for service for the three preceding months, and again on July 1, August 1, and until October 1, on which date a bill covering the seven months preceding, in the amount of $200.50, was presented to the council and rejected.

On October 14, 1929, the parties having failed to agree, a proposition was made by the plaintiff to the defendant. There was some dispute about this, but it is clear that this offer was made; and in that proposition the plaintiff stated that if the council would pass a resolution authorizing the mayor and clerk to enter into such a contract with him ''to continue furnishing electric current for the street lights until April 1, 1930, I will do so and furnish said current for one half the present rate for same, or $1.00 per month each light so furnished, and if a contract is entered into it may provide that said $1.00 per month per light shall date from April 27, 1929.'' On said date of October 14, 1929, the plaintiff went before the council and again tendered his bill for $200.50. After some discussion a new bill was prepared and submitted to the council for $145.40, which included the old rate for the months of March and April 1929, and the rate of $14, or $1 per month per light for the remaining months. It seems that the difference between the new proposition and the old was that the council desired to have the lights continued from month to month while the plaintiff was not satisfied with that form of contract. However, in the end he accepted and cashed the warrant issued for $145.40, and continued thereafter to maintain the lights. It seemed to be the understanding of the council and, as we view the evidence, of the plaintiff, that there would be no further payments on the basis of the old rates. The compromise payment covered the month of October, but there can be no question that the council refused to enter into any further contract.

The evidence is very voluminous. It is contained in an abstract and an amendment to the abstract, which consists of parts omitted from the abstract in an amount much larger than

the original abstract; but as we view the evidence, the understanding seemed to be that the parties proceed under a new arrangement and the council, on November 4, by motion agreed that the plaintiff might continue until December 1, at the rate of $1 per month. Thereafter the plaintiff, after accepting the warrant tendered him at the October meeting, presented another bill on December 2, in which he included the full charge as a balance for May to October, inclusive, to which was added the bill for the November street lighting at the old rate of $28. A warrant for $14 was issued by order of the council for the November lights, and cashed by plaintiff.

Without undertaking to set out all the evidence with regard to this alleged agreement or settlement, we feel, after reading carefully all the evidence, that it was understood by all parties concerned at the October meeting of the council that the old arrangement was discontinued and a new arrangement was to be made. After the month of December 1929, the plaintiff continued to furnish the lighting, but the council refused to pay, and did not order any service for January or any succeeding month, and the council has never since January 1, 1930, made or authorized any payments.

Under the evidence, which has been referred to heretofore as being involved and voluminous, it appears to this court that whatever may have been the effect of the original contract or whatever may have been the effect of the actions of the town council on March 4 and May 7, 1929, at the meetings of which council the resolutions were adopted, the parties, by their actions, mutually agreed on a new arrangement, at any rate to the extent of abandoning the old contract or arrangement under which the lights had been furnished, and this is indicated by a number of events, by the testimony of the members of the town council, and by its records, and, on examination of the abstract, it appears from the testimony of the plaintiff himself, as shown by his actions and conduct. There is no question that he accepted the compromise payment of $145.40 and that it was so accepted under the new rate of $14 per month. That it was with his knowledge and consent is evidenced by the fact that he was not only present at the meeting on October 14, when such proceedings were had and made of record, but was again present at the subsequent meeting on November 4, when the record of the former meeting was read and a motion to con-

1046

tinue the lights to December 1, 1929, at· the new rate of $1 per month. The check for $145.40 was cashed by him after the November meeting, on November 6. Having abrogated the contract or abandoned it by his acts, conduct, and agreement, he either stood in the position of furnishing the lights according to the demand of the council from month to month, or was without any understanding whatever as to any rate or as to any future furnishing of such lights. There was a real dispute touching the subject matter of the compromise or settlement. The defendant's council and the members thereof were holding out that there was no valid. contract in existence, and at the final meeting at the time of the acceptance of the warrant by plaintiff, it was understood by all parties that this acceptance was in settlement of a previous dispute. See Schultz v. Farmers Elev. Co., 174 Iowa 667, 156 N. W. 716; 22 C. J., p. 1209, sec. 1069; 1 C. J. S., Accord and Satisfaction, p. 560, sec. 48b. If, in fact, a new agreement was entered into according to the claims of all the defendant's witnesses, the old arrangement or agreement was extinguished. Should there be any claims under a new agreement in the event that either party fails to carry it out, it does not revive the old contract or agreement, but any rights that would accrue to either party in any default would arise under the new and substituted contract. 1 C. J. S., Accord and Satisfaction, p. 489, sec. 22. That the plaintiff did accept and cash the warrant tendered him is not disputed, and the acceptance, with knowledge that it was tendered as payment in full, bound the plaintiff. Marshall v. Bullard, 114 Iowa 462, 87 N. W. 427, 54 L. R. A. 862; Boyd v. Moats, 75 Iowa 151, 39 N. W. 237; Keck v. Hotel Owners Mut. Fire Ins. Co., 89 Iowa 200, 56 N. W. 438.

We think it clear that there was a real dispute between the parties to this action, that the claim was unliquidated and that the town warrant was issued in full satisfaction of the claim with the full knowledge of the plaintiff, and that he accepted the same and did not reject it, which, under the law, he would be compelled to do. In other words, with such knowledge and under such offer, the offer must be accepted or rejected as a whole, and if plaintiff accepted the warrant for $145.40 with such knowledge, it constituted an accord and satisfaction. Sparks v. Spaulding Mfg. Co., 158 Iowa 491, 139 N. W. 1083; Ferguson v. Grand Lodge, 174 Iowa 61, 156 N. W.

176; Minnesota & Ontario Paper Co. v. Register & Tribune Co., 205 Iowa 1228, 219 N. W. 321.

It is sometimes difficult to determine in cases of this kind whether the facts show an accord and satisfaction or a novation. The terms are often used interchangeably, and by some authorities it has been held that the term novation is frequently applied to transactions in which a substitution of obligation is effected as the result of an accord and satisfaction, so it may be said that novation is a species of accord and satisfaction, and it may be that in the present case the term novation would be a more accurate designation. 1 C. J. S., Accord and Satisfaction, p. 465, div. 5 of sec. 1. Whether the new arrangement between the plaintiff and the council amounted to an accord and satisfaction or a novation—the latter including accord and satisfaction—we think it clear that nothing more was to be claimed by either party under the terms of the old contract, and that there was a settlement so far as any rights might be claimed under such contract; that the court was right in sustaining the motion for a directed verdict, and that such ruling should be sustained.

Under the record and for the reasons above set out we hold that the ruling of the court is approved, and the case is affirmed.—Affirmed.

All JUSTICES concur.