MYRL OLSON, appellant, v. WILSON & COMPANY, a corporation, appellee.

No. 48270.

(Reported in 58 N.W.2d 381)

May 5, 1953.

Fitzgibbons & Fitzgibbons, of Estherville, for appellant.

Lee & Anderson, of Estherville, for appellee.

LARSON, J.—On or about August 1, 1951, the plaintiff sold thirty head of cattle by oral contract to the defendant, through defendant's agent, a Mr. Johnson. Plaintiff claimed he was to receive thirty-five cents a pound for the cattle, plus the excess if they were dressed out at a better grade. Defendant admits buying the cattle but denies plaintiff's claim as to the price agreed upon and contends that the cattle were purchased from plaintiff on a grade and yield basis in compliance with OPS regulations. Under plaintiff's claim they amounted to $10,725.75. Under defendant's claim the amount due was $9372.80.

After delivery of the cattle to defendant on August 6, plaintiff received a draft in the net sum of $9372.80, which was marked "in full payment of the above items." The items were listed as "cattle, 30 head, weight 30645, price $30.59, amount

$9374.30, average test." On August 16, through his attorney, plaintiff by letter acknowledged receipt of the draft and advised defendant of his demand for $1351.45 in addition to the amount received. This letter stated: "Mr. Olson has not cashed this check and will not cash the check until he has been paid the additional sum of $1351.45 which is the amount owing him for thirty head of cattle at 35c per pound." Plaintiff also threatened the commencement of suit if the balance claimed was not received by August 30, 1951. Defendant replied by letter of August 23 stating that they were making a "detailed investigation" of the matter in dispute and would advise plaintiff when it was completed.

On September 14, 1951, plaintiff, through his attorney, again wrote the defendant-company asking that defendant grant permission to plaintiff to cash the original draft without prejudice to plaintiff's claim for the balance, suggesting these words: "That Myrl Olson may endorse and cash Wilson & Co.'s Draft No. 9634, dated August 6, 1951, in the sum of $9372.80 without prejudice to any claim or rights he may have against your company, and that your company will not construe said endorsement and presentation for payment to be an admission by Mr. Olson that he has been paid in full for said 30 head of cattle weighing 30645 pounds."

On September 17, 1951, the defendant-company wrote plaintiff's attorney advising him it had completed an investigation and was satisfied that there was no guaranteed price of thirty-five cents per pound, and that the draft represented a remittance on the basis of grade and yield of the cattle slaughtered, and that the plaintiff had received payment for their full value. This letter also stated: "Your communication of September 14th concerning the cashing of the check is, of course, a matter for the decision of Mr. Olson, since he was paid the full value of his cattle and this value was contained in our original remittance."

On October 1, 1951, the plaintiff through counsel again wrote defendant as follows: "This letter is to advise you that today Myrl Olson presented for payment your draft No. 9634 in the sum of $9372.80. However, it is Mr. Olson's intention to consider this draft as only a partial payment on the 30 head

of cattle sold to your company. It is not Mr. Olson's intention to accept this draft in full satisfaction of his claim against your company nor is the acceptance of this draft to be considered as an accord and satisfaction. * * * Mr. Olson does not intend to waive any rights or claims he may have for the balance in the sum of $1351.45 * * *."

This letter was delivered to defendant two days later in Albert Lea, Minnesota. The draft was payable at First National Bank in Chicago, Illinois. Copies of the letters were filed as exhibits and were not denied. The present suit was commenced October 3, 1951, with plaintiff asking judgment against defendant for the sum of $1351.45.

Based upon the correspondence between the parties, the defendant, in addition to denying plaintiff's version of the contract, pleaded accord and satisfaction and asked dismissal of plaintiff's action. Defendant also made application to the court to adjudicate separately in advance of trial, in accordance with rule 105, Rules of Civil Procedure, the law issue of accord and satisfaction. The matter was submitted on the uncontroverted allegations of the pleadings on April 25, 1952, and the learned trial court in finding for the defendant held as a matter of law that there was an accord and satisfaction. We agree.

The only question before us is whether under the record there was an accord and satisfaction established as a matter of law.

The law looks with favor on the adjustment and settlement of controversies without resorting to court action. Shahan v. Bayer Vehicle Co., 179 Iowa 923, 162 N.W. 221. Settlement by accord and satisfaction involves essentially a new contract or agreement, and the elements of a new contract must be found in the settlement to make it valid. Kellogg v. Iowa State Traveling Men's Assn., 239 Iowa 196, 29 N.W.2d 559. Obviously each case must be determined upon its own facts and circumstances. However, there are certain rules and decisions which guide and control transactions of this kind, such as those affecting liquidated and unliquidated claims, and the acts of the parties relating to intention, consideration, necessary implications, and bona fide disputes. We shall discuss them as they relate to this case, which

is not complicated. It involves only a simple dispute between two parties over the terms of an oral agreement by which plaintiff sold and delivered cattle to the defendant.

I. There are many definitions of accord and satisfaction. "Accord and satisfaction is a method of discharging a contract or cause of action, whereby the parties agree to give and accept something in settlement of the claim or demand of the one against the other, and perform such agreement, the 'accord' being the agreement, and the 'satisfaction' its execution or performance." 1 C. J. S., Accord and Satisfaction, section 1, page 462.

In an early Iowa case, Perin v. Cathcart, 115 Iowa 553, 557, 89 N.W. 12, 13, Judge Deemer said: "But as an accord and satisfaction is an executed agreement whereby one of the parties undertakes to give, and the other to accept, in satisfaction of a claim arising either from contract or tort, something other or different from what he is or considers himself entitled to, no invariable rule can be laid down, with any degree of certainty, as to what constitutes such an agreement. Each case must be determined largely on its peculiar facts. To constitute a valid accord and satisfaction, not only must it be shown that the debtor gave the amount in satisfaction, but that it was accepted by the creditor as such. Jones v. Fennimore, 1 G. Greene 134; Weddigen v. Fabric Co., 100 Mass. 422. The agreement need not be express, but may be implied from circumstances, as shown in the cases just cited. Where an offer of accord is made on condition that it is to be taken in full of demands, the creditor, doubtless, has no alternative but to refuse it or accept it upon such conditions. Keck v. Insurance Company, 89 Iowa 200."

While in the broad field of the law relating to accord and satisfaction there has been much confusion and conflict, and all of the cases cannot be reconciled, the decisions of this court have been consistent and sound. This is especially true when such matters involve accord and satisfaction of single unliquidated claims, such as we have here presented to us.

Plaintiff and defendant entered into a contract for the sale and purchase of cattle, and the dispute centers upon the basis of the purchase. There is no dispute excepting the bona

fide dispute as to the basis of the computation per pound for the cattle. Plaintiff contends it was on the basis of thirty-five cents a pound, plus the excess if they were dressed out at a better grade, and defendant contends the basis was on a grade and yield in compliance with the OPS regulations. This was the issue to be resolved in settlement.

II. According to Webster's New International Dictionary, a claim for debt or damage is "liquidated" in law when the precise amount thereof is fixed, or has been agreed upon. Kellogg v. Iowa State Traveling Men's Assn., supra; State ex rel. Fletcher v. Naumann, 213 Iowa 418, 429, 239 N.W. 93, 98, 81 A. L. R. 483. In I Williston on Contracts, Rev. Ed., section 128, page 437, "An unliquidated claim is one, the amount of which has not been fixed by agreement or cannot be exactly determined by the application of rules of arithmetic or of law."

Plaintiff's claim had not been and could not be exactly determined by the rules of arithmetic or by law. It had not been fixed by mutual agreement. We have said, "If it is admitted that one of two sums is due, but there is a dispute as to which is the proper amount, the demand is unliquidated within the meaning of accord and satisfaction." Schultz v. Farmers' Elevator Co., 174 Iowa 667, 675, 156 N.W. 716, 719 (citing Greenlee v. Mosnat, 116 Iowa 535, 90 N.W. 338; Sparks v. Spaulding Mfg. Co., 158 Iowa 491, 139 N.W. 1083).

In the Greenlee case at page 538 of 116 Iowa, we said: "As related to the subject of accord and satisfaction, the term 'liquidated' * * * means one where the amount due has been ascertained and agreed upon by the parties, or is fixed by operation of law. * * * When not so determined, it is the subject of compromise." This case affirms the rule stated in Nassoiy v. Tomlinson, 148 N. Y. 326, 330, 42 N.E. 715, 716, 51 Am. St. Rep. 695: "A demand is not liquidated, even if it appears that something is due, unless it appears how much is due, and when *it is admitted that one of two specific sums is due,* but there is a genuine dispute as to which is the proper amount, the demand is regarded as unliquidated, within the meaning of that term as applied to the subject of accord and satisfaction." (Italics ours.)

■ It may be well here to point out what is meant by the term *one of two specific sums*. It does *not* mean sums that can be exactly determined by the rules of arithmetic or law. It refers to sums claimed by each of the respective parties in the dispute; one contending for one sum and one for the other. Neither sum is the fixed or liquidated sum. True, the rule is that one cannot secure an accord and satisfaction of a liquidated or sum certain debt by the payment of a lesser amount for the reason that then there is no consideration upon which to base the accord and satisfaction. It is on this point most of the confusion has arisen in cases involving accord and satisfaction and which gives rise to the so-called "creditor and debtor" doctrine referred to by plaintiff as discussed in the case of Kellogg v. Iowa State Traveling Men's Assn., supra.

III. The confusion we think is gone when one does not try to designate the term liquidated claim as exclusive in all cases involving "one of two sums" controversies, for that may also fit the liquidated claim. Kellogg v. Iowa State Traveling Men's Assn., supra. Usually, as in this case, the plaintiff claims that one sum is correct and the defendant another, according to their understanding of the original agreement. The admission or tender by the debtor of one sum does not necessarily make it the lesser of two fixed sums, as they may or may not be fixed sums. Therefore, it cannot always be said that when the debtor pays the sum he contends for he gives up nothing, and when the creditor gives up his claimed figure he does so without consideration. The correct or fixed sum may not have been ascertained. One or the other, or neither, may be correct, and if this be so then the payment of some sum, with an understanding by both parties of the new accord or agreement is consideration and is satisfaction of the debt. If the amount claimed by the creditor is determined, definite and fixed, payment by the debtor of a lesser sum no matter what his contention may be will not result in accord and satisfaction, as the claim is liquidated, and requires further consideration for its discharge. 1 C. J. S., Accord and Satisfaction, section 32b, Dispute or Controversy, pages 515 to 519, states:

■ "In order that a claim or demand may be capable of being satisfied and discharged by the payment of a lesser amount than is claimed by the creditor, without any new or additional consideration, there must be a genuine dispute or controversy between the parties concerning either the amount due or the debtor's liability, or the claim must be unliquidated, for the only consideration for the accord and satisfaction, and the relinquishment of the unpaid balance of the claim, is the settlement of the dispute or the adjustment of the rights of the parties."

It is sufficient if the parties honestly believe in the correctness of their positions and assert their claim in good faith. "Thus a claim is unliquidated, even if it appears that something is due, unless it further appears how much is due * * *." That a bona fide dispute exists here there is no doubt.

■ IV. It is correctly said that the intention of the parties must be determined in such matters. This court in passing on like facts in Schultz v. Farmers Elevator Co., supra, said at page 673 of 174 Iowa: "What was the effect of what he did say and what he did? * * * the evidence shows conclusively that he went to the defendants to obtain a settlement for his corn. There was a dispute as to the amount due. Defendants say they paid him the amount of the check in settlement of his claim, and plaintiff took the check and used the money. We are of opinion that, under the record, there was a settlement and a complete accord and satisfaction."

In Sparks v. Spaulding, supra, it was held that where there is a dispute in good faith, as to the amount due on any unliquidated claim, the defendant offered plaintiff a check in full satisfaction, and the plaintiff cashed it with full knowledge that it was tendered in full payment, it constituted an accord and satisfaction.

"Accord and satisfaction ordinarily involves purely a question of intention; at the least, intention is a controlling factor, and so must be clearly manifested, and is to be determined from all the circumstances attending the transaction. There can, therefore, be no accord and satisfaction unless the creditor, or party

receiving the thing or promise offered, understands, or, from the circumstances of the offer, or the acts or declarations with which it is accompanied, is bound to understand, that he takes it in full satisfaction of his claim." 1 C. J. S., Accord and Satisfaction, section 6, page 478.

The intention of the parties is therefore an important factor. But intention is not alone determined by the words of a party, although they are sufficient for such determination in this case. It is often determined by his acts, the legal import of which he is held to know and expect others to believe.

In Beaver v. Porter, 129 Iowa 41, 46, 105 N.W. 346, 348, the trial court gave the following instruction:

"To constitute an accord and satisfaction, where there is a bona fide dispute, it is necessary that the money should be offered in satisfaction of the claim, and the offer accompanied with such acts and declarations as amount to the condition that, if the money is accepted, it is accepted in satisfaction, and such that the party to whom it is offered is bound to understand therefrom that, if he takes it, he takes it subject to such conditions. A party to whom an offer is thus made has no alternative but to refuse it or to accept it upon such conditions, and if he takes it his claim is canceled." This is the rule in Iowa and in most other jurisdictions.

We said in Sparks v. Spaulding Mfg. Co., supra, at page 500 of 158 Iowa, " 'If he takes it [the offer], his claim is canceled, and no protest, declaration, or denial of his, so long as the condition is insisted on, can vary the result.' "

Application of this rule to the facts before us leads to no other conclusion but that the offer to settle the bona fide dispute as to the terms of the sale by tendering the draft for $9372.80, together with the letter of September 17 refusing to allow the sum to be accepted under any condition but full payment, clearly expressed the intention of the defendant. That defendant's intention was fully understood by plaintiff there can be no doubt. Plaintiff presented the draft for payment fully aware of defendant's position as expressed in his letter of September 17. Plaintiff's declaration in his letter of October 1

is of no avail, and even though defendant had received the letter in time to stop payment of the draft in Chicago, which is doubtful, it was under no duty to do so. By his acts plaintiff had accepted defendant's offer. The new agreement had been executed and accord and satisfaction determined upon the execution and presentment of the draft for payment. It was incumbent upon the plaintiff to get the defendant's consent to consider the draft as part payment before he cashed the draft.

V. Plaintiff makes some complaint because the matter of intention was not presented to the jury, but such determination by a jury is only in cases where reasonable minds might reach different conclusions from the facts. Presently there was no dispute as to the express intention of the parties relating to accord and satisfaction, and to have submitted it to a jury would have been error. Sparks v. Spaulding Mfg. Co., supra; Schultz v. Farmers Elevator Co., supra; Minnesota & Ontario Paper Co. v. Register & Tribune Co., 205 Iowa 1228, 219 N.W. 321; Munn v. Town of Drakesville, 226 Iowa 1040, 285 N.W. 644; Zabawa v. Osman, 202 Iowa 561, 564, 210 N.W. 602.

VI. Plaintiff was not deceived or misled by defendant. Plaintiff was acting under advice of counsel, with an understanding of the consequences of his acts. He tried to avoid those consequences unilaterally and failed. He knew the circumstances under which he accepted the tender, and under the law there was a meeting of the minds. He cannot now be heard to complain when his acts resulted in accord and satisfaction. Ferguson v. Grand Lodge, 174 Iowa 61, 156 N.W. 176.

VII. It is true the courts will protect against settlements where there is no consideration for the new agreement, as in cases where there are liquidated claims involved, and where one of the parties has not understood or has been taken advantage of by the other party. Such cases are cited by defendant but do not apply here. In the case of Kellogg v. Iowa State Traveling Men's Assn., supra, 239 Iowa at page 212, 29 N.W.2d, page 568, Justice Bliss ably discusses these distinctions but clearly does not change the long line of authority on the "simple dispute between two persons on even terms over the amount of an account for wages or merchandise."

In both the Kellogg case and the case of Barr v. Clinton Bridge Works, 179 Iowa 702, 161 N.W. 695, cited by plaintiff, we find two claims under one contract, both claims being fixed or liquidated, and we held that the accepted tender of one liquidated claim did not act as an accord and satisfaction of the other whether it was liquidated or unliquidated. It was an affirmance of the rule or position that the acceptance of a lesser amount in a liquidated claim does not discharge the obligation for want of consideration. These are not the circumstances in the case before us, for here the single amount due for personal property is the only dispute.

Defendant refers to the Minnesota rule as announced in the case of Dwyer v. Illinois Oil Co., 190 Minn. 616, 621, 252 N.W. 837, 839. We have examined that case and do not find it in point, for there we find a controversy over a liquidated claim, under a written contract and an attempt to reach an accord and satisfaction based on an oral avoidance of the contract. There the court said: "* * * here the debt was either one of two *fixed amounts,* depending upon whether or not the contract had been modified, and defendant here paid plaintiff no more than it admitted was due under the modified contract, namely, the smaller amount." (Italics ours.) The rule stated by the Minnesota court was to require: (a) the *check* must be offered in full payment (b) of an *unliquidated claim,* concerning which there is a *bona fide dispute,* and (c) for a *sufficient consideration.* In other words, each party must give up some right to which he asserts an undetermined bona fide claim. They simply applied that rule. Further examining the Minnesota cases we find in Addison Miller, Inc. v. American Cent. Ins. Co., 189 Minn. 336, 345, 249 N.W. 795, 799, referred to with approval in the Dwyer case, this statement by the court: "The act of liquidating and paying a claim, resting in honest controversy as to amount, made a consideration, the value and legal adequacy of which are beyond question." This announcement is in accord with our holdings. If we apply these rules to the facts at hand, we have a check or draft offered in full payment of an unliquidated claim, concerning which there is a bona fide dispute and the act of liquidating and paying this claim which provides the con-

sideration, the value and legal adequacy of which are beyond question.

That the claim involved herein between plaintiff and defendant was unliquidated there can be no doubt, for the exact amount due was clearly in dispute and could not be resolved except by a new agreement or the court action threatened by plaintiff. It was the proper subject of a new agreement. When defendant delivered to the plaintiff the draft for $9372.80 and made its position perfectly clear that the same was in full payment of the claim and refused to consider it otherwise on request, there was but one of two choices left to plaintiff, either accept it as offered or reject it, return the draft and commence his legal action, as he had threatened to do in his correspondence.

However, plaintiff tried to "eat his cake and keep it too." Sparks v. Spaulding Mfg. Co., supra. In an attempt to avoid the legal consequences of his acceptance, unilaterally without the consent of the debtor, plaintiff cashed the draft and wrote the defendant that it was not an accord as his act purported to conclude. We do not find therein any basis for estoppel. Plaintiff cannot deliberately act thusly and then try to avoid the legal consequences of his act by claiming defendant should have raced him to the bank to stop payment of the draft. At the very least plaintiff's last letter to the defendant cannot be said to have been timely.

We have examined the case of Shull, Gill, Sammis & Stilwill v. McCrum, 179 Iowa 1232, 1237, 162 N.W. 759, 761, cited by plaintiff and do not find it in point. Therein defendant claimed the check sent covered additional matters not understood by plaintiff when he cashed the check. When it was perceived that defendant claimed more, plaintiff notified defendant of the misunderstanding in time for plaintiff to stop payment of the check at the bank. He did not do so, and the fact that plaintiff "did not know that they were making a settlement in full of fees for services in the divorce suit" could not amount to an accord and satisfaction of that additional claim for services. There was no such misunderstanding as to the issues or intentions of the parties in the matter before us.

The trial court correctly held that an accord and satisfaction had been effected, and dismissed plaintiff's petition. There is no error.—Affirmed.

SMITH, C. J., and all JUSTICES concur.