MAYRATH COMPANY, appellant, v. TRUMAN HELGESON, doing business as HELGESON MOTOR COMPANY, appellee.

No. 51919.

(Reported in 139 N.W.2d 303)

544

JANUARY 11, 1966.

Weible & Stipp, of Forest City, for appellant.

Eugene G. Sarno, of Lake Mills, and Westfall, Laird & Burington, of Mason City, for appellee.

LARSON, J.—This accounting action brought by the Mayrath Company, an Illinois corporation, of Compton, Illinois, against Truman Helgeson, doing business as Helgeson Motor Company, of Lake Mills, Iowa, raises the question of whether a letter addressed to Mr. Les Hein, Mayrath Company, at Compton, enclosing a check for $646.71 "covering complete settlement of our account with you", became an accord and satisfaction when the check made out to the company was deposited to its account and the money never returned to defendant. By stipulation this issue was tried separately to the court, which found for defendant and dismissed plaintiff's petition. Plaintiff appeals.

Claimed as error was the court's determination that the evidence showed Les Hein, a corporation officer and employee, had authority to settle claims due the corporation, that there was no fiduciary relationship between plaintiff and defendant generated by their contract which would prevent the application of the doctrine of accord and satisfaction, and that Hein's acceptance of

the check under the stated condition was ratified by corporate acceptance of the benefits thereof.

I. Except as to construction of the contract involved, this case is not reviewable de novo, but only to correct errors at law, and if the findings of fact have evidentiary support, viewed in the light most favorable to those findings, we do not attempt to weigh the evidence and cannot interfere with the trial court's findings. Rule 334, Rules of Civil Procedure.

The record discloses that on or about June 3, 1959, plaintiff and defendant entered into a written contract whereby defendant became both a dealer and warehouseman for plaintiff's line of farm machinery and goods. According to plaintiff's petition, goods valued at $248,462.41 were thereafter delivered and charged to defendant. When the contract was terminated by plaintiff in the spring of 1961, defendant was credited with $2180.32 for payments on account and the value of the goods returned in a total sum of $242,582.92. Plaintiff demanded judgment for the difference of $5879.49.

The cause of the contract termination was a telephone dispute between the corporation president, Martin Mayrath, whose office was in Dallas, Texas, and defendant Helgeson as to the fees and commissions Helgeson was to have for his services as a dealer and warehouseman. The dispute as to the amount due plaintiff thereafter, for the most part, was between defendant and Mr. Hein, who was in charge of collections at the Compton, Illinois, plant of the Mayrath Company. Correspondence between Helgeson and Hein covered several months, and on August 8, 1961, Helgeson sent to Mayrath Company at Compton, Illinois, a letter setting forth wherein he differed with the statement of account sent him by Hein, stated his claim for compensation in closing their account, and tendered his check for $646.71 in "complete settlement of our account with you." The letter and check were received by Hein and the check was deposited to the Mayrath Company account, which still retains the proceeds of the check.

The trial court found Hein had implied and apparent authority to accept defendant's offer, did so, and there was an accord and satisfaction.

■ II. It is well settled in this jurisdiction that the authorized acceptance of money offered in satisfaction of a genuinely disputed claim, if accompanied by acts and declarations which amount to a condition that, if accepted, it is in satisfaction of the claim, amounts to an accord and satisfaction. A party to whom such an offer is made has no alternative but to refuse and return the money, or to accept, and if he accepts on those conditions, his claim is canceled. Olson v. Wilson & Co., 244 Iowa 895, 58 N.W.2d 381; Minnesota & Ontario Paper Co. v. Register & Tribune Co., 205 Iowa 1228, 219 N.W. 321; Schultz v. Farmers' Elevator Co., 174 Iowa 667, 156 N.W. 716.

■■ Appellant does not disagree with that rule, but contends the evidence here was insufficient to support a finding that Hein had authority of any kind to accept the Helgeson offer to compromise and settle this disputed account, or to bind the Mayrath corporation by his deposit of the check in the company account. Appellant correctly contends it was defendant's burden to prove by a preponderance of the evidence that Hein had such authority, actual, implied, apparent or ostensible, in August 1961. Whitney v. Krasne, 209 Iowa 236, 246, 225 N.W. 245; 1 Am. Jur.2d 306; 2 C. J. S., Agency, 1339, 1340; 19 C. J. S., Corporations, 599. However, it must also concede that usually the nature and extent of the authority of an agent, and whether his acts or contracts are within the scope of his authority, are questions of fact, and that generally agency is to be determined by what the principal said or did, rather than by what the agent said or did. Spencer Concrete Products Co. v. Spencer, 254 Iowa 87, 93, 96, 116 N.W.2d 455; Grismore v. Consolidated Products Co., 232 Iowa 328, 344, 5 N.W.2d 646, 651; Hall v. Crow, 240 Iowa 81, 90, 34 N.W.2d 195, 200. Thus, we must examine carefully the evidence of what powers and duties appellant permitted Hein to exercise and which were apparent to appellee during the time of this transaction.

There can be no doubt that Helgeson's letter and check sent to the Mayrath Company at Compton on August 8, 1961, constituted an offer of a genuinely disputed claim. Whether all items were bona fide, we need not decide. It was an unliquidated claim and the offer of settlement was clearly conditional. Plaintiff's

statement of account sent to defendant by Hein showed debits and credits and the balance claimed due. Defendant disputed the credits for 1960 business, stating their difference to be $4212.52. He further claimed credit for a sum which should have been collected direct by plaintiff amounting to $600.92, and $1066.05 for loading, unloading, handling expenses, etc. at termination.

III. The liability of the principal for the acts and contracts of his agent is not limited to such acts and contracts of the agent as are expressly authorized, necessarily implied from express authority, or otherwise actually conferred by implication from the acts and conduct of the principal. All such acts and contracts of the agent as are within the apparent scope of the authority conferred on him are also binding upon the principal. Apparent authority, or ostensible authority, to do such acts or to make such contracts, is that which, although not actually granted, has been knowingly permitted by the principal or which he holds the agent out as possessing. Hall v. Crow, supra, 240 Iowa 81, 90, 34 N.W.2d 195, 200; Union Mut. L. Ins. Co. v. Wilkinson, 80 U. S. (13 Wall.) 222, 20 L. Ed. 617; 2 C. J. S., Agency, 1339, 1340; 2 Am. Jur., Agency, section 101, page 82; Restatement of the Law, Agency, section 159.

In Hall v. Crow, supra, the court pointed out that it was a jury question as to whether a salesman for a seed company was authorized to make representations and warranties for the company.

In 19 C. J. S. at page 599 it is stated: "As a general rule an officer or agent of the corporation has no power to compromise or settle a claim by or against the corporation, or to release a claim of the corporation against a third person, except to the extent that such power is given to him either expressly or by reasonable implication from the circumstances."

At 2 C. J. S., pages 1339, 1340, it is stated: "An agent, in order to have power to compromise or settle a claim, must be specially authorized for that purpose, or must have such a broad general authority of management and control that the power arises as an incident to the conduct of his agency in its ordinary manner; * * *."

In Nertney v. National Fire Ins. Co., 199 Iowa 1358, 203

N.W. 826, we approved the statement in Union Mut. L. Ins. Co. v. Wilkinson, supra: " 'The powers of the agent are prima facie coextensive with the business intrusted to his care, and will not be narrowed by limitations not communicated to the person with whom he deals.' "

We said in Spencer Products Co. v. Spencer, supra, 254 Iowa 87, 93, 116 N.W.2d 455, that to bind a corporation, the officer, employee or agent must be one whose connection with the company is such, or whose employment is of such character, that he impliedly had authority to bind it, and would be likely to inform the corporate officers of the offer and acceptance in its behalf.

Because of what authority is usually delegated to an officer of the corporation or assumed by him, and not objected to by the board, there has been a tendency to imply the powers of a general manager from the office alone to enter into such ordinary contracts as the custom and necessities of the business would justify.

 Applying these rules to the evidence produced, the trial court found "Hein was acting within the apparent scope of his authority", that he was "the key man" acting for the corporation at Compton, and that the reasonable implications to be drawn from the facts supported the conclusion that Hein was authorized to make this settlement with defendant.

That Hein had a responsible position at the Compton office cannot be denied. None was above him at that office. He appeared to be the general manager of that office, although he did not have that title. Although plaintiff claims he was just the bookkeeper, the name is not important if in fact he was the manager at the Compton office. He was secretary of the corporation and was perhaps a member of the board of directors. He had the confidence of the corporation president, Mr. Mayrath, and executed the corporate policy at that office after consulting with Mr. Mayrath. He was placed in charge of accounts and collections. He sent out the statements of account to over 500 dealers who regularly bought from the company, 500 occasional dealers, and some 50 distributors in this territory. If such a dealer had a complaint or an adjustment had to be made, the matter was

550

taken up with Hein. Although Mayrath and Hein claimed Hein had no authority to compromise or settle claims for the company, it appeared adjustments had been made by him after discussing the problem with Mr. Mayrath. It appeared Hein was in touch with the president, Mayrath, by telephone three or four times a day, that he had discussed the Helgeson account and dispute with Mayrath, and that Mayrath had at no time warned Helgeson that Hein had limited or no authority to settle this dispute or compromise this claim.

Mayrath was the corporation president and treasurer and the owner of all the stock. Director meetings were not regular, some being held over a glass of beer or on the telephone, and there were no minutes kept of those meetings. Proof of express Hein authority was not available. Although the corporate articles, the by-laws, and the minutes and resolutions of the board of directors were not presented to show what express, implied or restricted authority was given Mr. Hein, and there is no inherent or implied authority of the corporation secretary as such to enter into contracts for the corporation, as headman at the Compton office, the one in charge of accounts and collections, the one who charged goods to the corporation, signed checks on the corporate account, including the payroll, the correspondent with dealers and distributors doing business with that office, the court could well find that he had implied authority to compromise such disputes as the one at hand.

 Secret restrictions imposed by the corporate president on Hein, uncommunicated to defendant, would not change or alter the apparent authority possessed by Hein. Helgeson, of course, was unaware of the unorthodox operation of this corporation. He knew Mayrath was the top corporate official, but also knew it was Hein who appeared to run the Compton plant where defendant had his dealings.

 It is well settled the powers of a general manager are those sufficient to carry on the ordinary operations of the business. Lattin on Corporations, chapter 6, page 230; Volume II, Machen, Modern Law of Corporations, section 1672.

It is true, Hein testified that if his records showed a dealer owed one sum and the dealer claimed another he did not adjust

it himself, but said he first "brought the matter to the attention of Mr. Mayrath." 'Mayrath said he required that procedure, but Hein said, "I just had a habit of discussing it with him [Mayrath] at his request."

On the other hand, Hein said that after he received defendant's check and letter, he did not promptly take the matter up with Mayrath "because it didn't register as being anything unusual to me." This did seem unusual to the trial court if, as he said, he always had contacted Mayrath before in accepting a lesser sum in settlement of a disputed account. Hein also said he could recall no specific instruction given him in connection with the letter of August 8, 1961.

Under this record which we have studied with care, we are inclined to agree with appellee that there was sufficient evidence, if believed, to find both implied and apparent authority in Hein to compromise and settle this disputed claim of the corporation.

IV. Appellant further contends the trial court erred in holding there was a ratification of Hein's acceptance of the check, because all the facts were not known to the corporation officers and there was no benefit received by its retention.

■■■■ The acceptance by a corporation of the benefits of the acts of one of its officers or employees knowingly, whether authorized to act for it or not, amounts to an affirmance or ratification of his acts. Olson v. Wilson & Co., supra, 244 Iowa 895, 58 N.W.2d 381; Ashland v. Lapiner Motor Co., 247 Iowa 596, 75 N.W.2d 357; Bertholf v. Fisk, 182 Iowa 1308, 166 N.W. 713; Wisconsin Lumber Co. v. Greene & Western Tel. Co., 127 Iowa 350, 101 N.W. 742, 69 L. R. A. 968, 109 Am. St. Rep. 387; Bohn v. Boone Building and Loan Association, 135 Iowa 140, 112 N.W. 199, 124 Am. St. Rep. 263; 2 C. J. S., Agency, section 50, page 1103; Restatement of the Law, Agency, sections 98, 99; 19 C. J. S., Corporations, section 1076, page 613.

In the Olson case we said the corporation could not retain the amount offered in full settlement and apply it on the account, that the corporation could not have its cake and eat it too. The communicated offer must be accepted as made or rejected completely.

In Ashland v. Lapiner Motor Co., supra, 247 Iowa 596, 602,

75 N.W.2d 357, an admitted employee of the corporation, in charge of collections, had signed agreements for it and had full knowledge of the transaction involved. Therein we said: "Such knowledge becomes the knowledge of his principal. * * * That appellant accepted the benefits of Dunn's scheme cannot be denied, and this amounts to an affirmance or ratification of Dunn's tortious action." Restatement of the Law, Agency, section 278; Stephenson v. Southern Pac. Co., 93 Cal. 558, 29 P. 234, 15 L. R. A. 475, 27 Am. St. Rep. 223.

In Bertholf v. Fisk, supra, 182 Iowa 1308, 1315, 166 N.W. 713, Fisk was the manager of the Guarantee Motors Company. He entered into an agreement with another, giving certain salary and commission for selling cars. In holding the corporation liable, although not a party to the agreement, we said: "Having received and accepted the benefit of the consideration paid by the plaintiff, it should be deemed to have ratified the contract made by its manager. This has been the repeated holding of this court for many years, on the subject of ratification by a principal."

The check of defendant herein dated August 8, 1961, was cashed by the plaintiff and its proceeds were retained. They have never been tendered back to defendant although it is clear the corporation and its officers knew of the conditions under which it was tendered long before this action was commenced, to say nothing of the imputed knowledge through its agent at Compton. Hein's knowledge obtained while acting within the scope of his employment was the knowledge of Mayrath Company, and, since there was evidence whereby the court could find he did communicate that knowledge to the other officers shortly thereafter, the conclusion is justified that the funds offered were willfully retained by the corporation. There has never been a repudiation on the part of plaintiff, and of course it is now too late. Olson v. Wilson & Co., supra. We said in Olson that the benefit received by the corporation by the accord and satisfaction is the obtaining of a sum certain which, although it may be less than the sum claimed, is or may be more than the debtor claims is due. This consideration requires a return of the funds offered or a ratification and settlement of the bona fide disputed claim.

Appellant argues further that it did not learn of the conditions under which the check was accepted until after it had changed its position by starting action on the account. As pointed out previously, the evidence would support the finding by the trial court that the corporation had both actual and implied knowledge of the letter and the deposit of the check before it changed its position, if it in fact did so after August 14, 1961. 19 C. J. S., Corporations, section 1076; Liebfritz v. The Dubuque Street Railway Co., 48 Iowa 709. Thus we find no merit in this assignment.

 V. Finally, appellant contends there could be no accord and satisfaction because of the fiduciary relationship between the parties established by the contract. It is true, where it appears the relationship between parties is that of principal and agent whereby the funds collected by the agent belong to the principal, there can generally be no accord and satisfaction. This is because there is a lack of consideration and there is no unliquidated claim to be compromised. There would be no debtor-creditor relationship, for all the money held by the agent belongs to the principal. See 1 C. J. S., 504; 2 Am. Jur., Agency, 315; 80 A. L. R. 1056. Thus, if the money in the hands of Helgeson represented by the check sent to the company belonged to the company, there could be no accord and satisfaction.

To resolve this issue we must examine and construe the contract designated "Consignment Distributor Agreement". In construing contracts of this nature we apply the principle which obtains in the construction of all contracts, that is, to ascertain the intention of the parties from the language used, read in the light of all the admitted or proved circumstances. Holbert v. Keller, 161 Iowa 723, 739, 142 N.W. 962.

 The parties agree this was a unique agreement, not a regular dealer, distributor, or warehouse agreement. The trial court considered the wording, the practice followed, and the pleadings, in order to determine the intent of the parties, and concluded the relationship intended was that of debtor-creditor. We must agree.

Paragraph 2 provided: "Helgeson Motor Company will pay Mayrath for all such goods which leave Distributor's warehouse

at the time of collecting the money for such goods, but in no event longer than ninety (90) days from time of withdrawal of goods, even though Distributor fails to make collection."

Paragraph 4, as amended, provided: "The effect of this agreement is that Mayrath charges Distributor five percent (5%) for allowing payment upon collection rather than regular net ten (10) day terms on goods leaving the warehouse of Distributor. A further effect of this agreement is that we will allow ten percent (10%) off Dealer's net for displaying all four lines, and an additional five percent (5%) for warehousing. A further effect of this agreement is that Distributor is able to keep a large stock of Mayrath goods in its warehouse at all times without having to make any payment to Mayrath for such goods except in accordance with this agreement. Distributor shall assume expenses, taxes, charges, and liabilities in connection with the safekeeping of such goods."

It is true Paragraph 3 seems to reject the debtor-creditor relationship, providing in part: "Distributor shall hold and care for such goods so delivered by Mayrath, as the property of Mayrath; and title to such goods or proceeds thereof shall always be vested in Mayrath. Title to such goods shall pass directly from Mayrath to the Distributor's customer in the manner set forth, and not otherwise."

Appellant argues these provisions make the contract one of agency, but we think the most that can be found as to the intent of the parties by the whole agreement would be that for goods warehoused, title was to be retained by Mayrath. When they were sold and delivered by Helgeson as a dealer, the charge was against him and not the purchaser of the goods.

On the other hand, from the billings and the pleadings it seems the parties contemplated the entire relationship was that of debtor-creditor, not principal and factor. The statements sent defendant showed all goods delivered to Helgeson were charged to him, and when the warehoused goods were picked up in 1961 he was credited with their value. In its petition plaintiff alleged, "the plaintiff and defendant entered into a written contract whereby defendant became both a consignment dealer and warehouseman for the plaintiff", and that "some [goods] would be

sold by the defendant, in respect to which machinery and equipment defendant would be serving plaintiff as a dealer", and in other respects would be serving as a warehouseman of goods to be "picked up by route men employed by the plaintiff." Other paragraphs of the petition alleged goods were delivered "for sale by defendant as a dealer, that defendant would pay to plaintiff * * *", and that the goods delivered were "charged" to the defendant, that he was given "credit" and there was a "balance owing by defendant to plaintiff." Plaintiff's petition was also made more specific October 4, 1963, by setting out the items of its account with defendant, listing itemized debits and credits.

At no place in plaintiff's petition is it claimed defendant was plaintiff's agent or was holding money or property of the plaintiff.

Courts have been faced with somewhat similar contentions in so-called floor plan agreements, but in this jurisdiction we have consistently refused to extend the agency rule to include floor planning unless the agreement clearly expressed that intention on the part of the parties to it. In Norwegian Plow Co. v. Clark, 102 Iowa 31, 37, 70 N.W. 808, there was a contract between a manufacturer of goods and another, giving the latter the privilege of selling goods in a certain territory and requiring him to obtain settlement for all goods at the time of delivery either in cash or notes to be made payable to the manufacturer, and not permitting him to use any of the proceeds of the sale until the manufacturer was paid in full, and authorizing him to sell goods at a reasonable profit. It was held a contract of sale and not of bailment. The court said:

"If the contract is one of pure agency, providing for a consignment of goods to be paid for at a fixed price out of the proceeds of the goods when sold, then it is a bailment for sale, and the title remained in the appellee until the goods were sold to a bona fide purchaser for value. But if the contract is in form an agency contract, but really one of sale, made so for the purpose of evading the statute; or if it is in reality a contract of sale by which the consignee became in fact a purchaser, and was liable for the goods when sold, as the principal debtor, then the contract is one of sale. * * * *One of the principal tests by which to*

*determine this question is, was there a binding promise on the part of the consignee to pay for the goods?* If there was such promise, the contract is ordinarily held to be one of sale, and not of bailment." (Emphasis supplied.)

Also see Bentley & Olmstead v. Snyder & Son, 101 Iowa 1, 69 N.W. 1023, and Henney Buggy Co. v. Cathels, 110 Iowa 24, 25, 81 N.W. 164. In the latter case the sole question was whether the contract was one of sale or bailment, and the court said, "there was evidence from which the court may have found that Cathels purchased the goods, and was at all times treated as the debtor of plaintiff, rather than as its agent; and, as the finding of the court has the force and effect of the verdict of a jury, we cannot interfere."

In General Motors Acceptance Corp. v. Whiteley, 217 Iowa 998, 1001, 252 N.W. 779, involving the question of bailment or conditional sales, we cited with approval Bentley & Olmstead v. Snyder & Son, supra, and quoted therefrom as follows: "The most infallible test by which to determine under which class the contract falls is to ascertain whether there is a promise by the purchaser to pay for the goods delivered. If there is such promise, then, no matter under what form the transaction is disguised, it is held to be a conditional sale, and not a bailment."

VI. Appellant further contends here that appellee's promise to pay merely made him a del credere factor, or one who, in consideration of a higher compensation, expressly engages to pay his principal the price of all goods sold by him if the purchaser fails to do so. See 35 C. J. S., Factors, pages 498, 502, 539; 22 Am. Jur., Factors, pages 327, 328; Mechem on Agency, Second Ed., sections 2498, 2499, 2534. However, having found as to the "dealer" part of the agreement there was no agency or fiduciary relationship, but only that of a debtor-creditor arrangement, and in view of the fact that the warehouse goods had long since been returned to appellant, we need not consider this assignment further.

VII. Having found that there was substantial evidence by which the trial court could find authority in Hein to bind the corporation by accord and satisfaction, and that the settlement had been ratified, and having found the contract between the

parties established a debtor-creditor relationship rather than a principal-and-agent relationship, the trial court's action in dismissing plaintiff's petition with prejudice must be sustained.— Affirmed.

All JUSTICES concur.