236 So.2d 154 (1970)
Melvin A. ROBINSON, Dorothy G. Robinson, Daniel Melnick, Janice Melnick, Nick Basiliko and Helen Basiliko, Appellants,
v.
LOYOLA FOUNDATION, INC., a Non-Profit Corporation, Appellee.
No. M-13.
District Court of Appeal of Florida, First District.
March 17, 1970.
Rehearing Denied April 10, 1970.
*156 Paul R. Stern, Daytona Beach, for appellants.
Louis Ossinsky, Jr., of Ossinsky & Krol, Daytona Beach, for appellee.
WIGGINTON, Judge.
Appellants, who were defendants in the trial court, seek review of a summary final judgment rendered in favor of plaintiff appellee.
Appellee landlord sued appellants in the Circuit Court of Volusia County, Florida, for damages suffered as a result of the alleged breach of a real estate lease by the tenants. Both the landlord and tenants are nonresidents of Florida, and the apartment complex which forms the subject of the lease is located in the State of Maryland. Upon the tenants' failure to comply with the financial requirements of the lease a supplemental agreement was entered into between the parties by which the tenants acknowledged their several defaults and agreed that the landlord could reenter and repossess the leased premises without institution of legal proceedings, preserving its right to recover against the tenants all damages, both past and future, incurred as a result of the tenants' defaults. Upon the execution of this supplemental agreement the landlord reentered the leased premises and proceeded to manage the property for approximately the next ensuing eight months prior to the institution of this action. Since the tenants were not amenable to personal service of process in this state, constructive service of process was obtained predicated upon an attachment of real property owned by them and situate in Volusia County.
The tenants filed in the cause their motion to abate the action because of lack of jurisdiction over their person, and to dismiss the complaint for insufficiency of service of process, which motion was denied.
By their first point appellants seek reversal of the judgment appealed on the ground that the trial court lacked jurisdiction over their person to maintain the proceeding or to render the judgment in personam against them. Appellants contend that the attachment of their lands which forms the basis of the constructive service of process on them was void for the reason that the debt alleged in the complaint was unliquidated in character. The statute under which the attachment was made provides as follows:
"When the debt is actually due, the motion shall state the amount of the debt that is actually due, and that movant has reason to believe in the existence of one (1) or more of the special grounds in section 76.04, Florida Statutes, stating specifically the grounds."[1]
To support their position appellants rely upon the decision rendered by the Third District Court of Appeal in the case of *157 Papadakos v. Spooner.[2] In the cited case an attorney filed suit against a former client for the recovery of a reasonable attorney's fee for services rendered the client in prior litigation. In an effort to obtain service of process on the defendant who at that time was a nonresident of Florida, the plaintiff attached real property owned by the defendant in Dade County where the suit was instituted. The Third District Court of Appeal, speaking through Judge Pearson, held that the claim sued upon for recovery of a reasonable attorney's fee, the amount of which had not been agreed upon between the parties, rendered the demand wholly unliquidated in character. The court then proceeded to refer to authorities which establish the proposition that the term "debt" referred to in the attachment statute contemplates a liquidated as distinguished from an unliquidated claim or demand, and that if the claim is for an unliquidated sum which the parties had neither agreed upon and which could not be definitely ascertained by ordinary mathematical calculation, it could not form the basis for an attachment under the statute.
In an annotation appearing in American Law Reports dealing with the subject of "Attachment or Garnishment  Debt", the author comments:
"At common law the action for debt lies for the recovery of a certain or definite sum of money. This has not always meant a particular, fixed sum, but such a sum as can be ascertained from fixed data by computation, or which is capable of being reduced readily to a certainty.
"It also lies on various kinds of contracts, including contracts of record such as a judgment or decree on simple contracts, express or implied, on a speciality [sic] or bond in which the demand is for the penalty, and for the recovery of statutory penalties and import duties."[3]
It has been generally held that liquidated claims arise ex contractu rather than ex delicto. A claim for debt or damages is held to be liquidated in character if the amount thereof is fixed, has been agreed upon, or is capable of ascertainment by mathematical computation or operation of law.[4]
In the case sub judice the basis of plaintiff's claim or demand as alleged in its complaint is for the following items of damage, to wit:
(a) The unpaid monthly installments of rent accruing between the date of first default and the date of the institution of suit;
(b) The monthly mortgage payments which the tenants bound themselves to pay to the first mortgage holder, which payments the tenants had defaulted in making over the period of time alleged in the complaint;
(c) The amount of ad valorem taxes which the tenants were obligated to pay under the terms of the lease and which, upon default, were paid by the landlord;
(d) A legal fee of $6,000.00 which the landlord was required to pay for reinstatement of the outstanding mortgage which became delinquent due to the defaults of the tenants in failing to make the monthly payments thereon as agreed in the lease;

*158 (e) A stated amount of money which the landlord was required to deposit in escrow for the protection of the mortgage holder on account of certain furnishings and equipment in the leased premises having been removed by the tenants prior to redelivering possession back to the landlord.
In addition to the above, the complaint prayed for a judgment awarding it the cost of the suit together with reasonable attorney's fee incurred by the landlord for bringing the action as provided by the terms of the lease. The complaint further alleged that the tenants were entitled to a credit against the amount owed by them for the net rentals collected by the landlord during the time it managed the property under the supplemental agreement prior to the institution of the suit.
Tested by the above-referred-to principles, it must be held that with the exception of the claim for attorney's fees all remaining claims or demands alleged in the complaint are for definite sums of money agreed upon by the parties in the lease contract which can be ascertained with certainty by mathematical computation. Each of such items is therefore a liquidated claim and forms a proper basis for the attachment under the principle of law enunciated in the Papadakos case, supra. With respect to the unliquidated claim for attorney's fees, the trial court held, and we agree, that such claim arises out of the necessity for instituting the action and forms no part of the claim arising from the tenants' default in performance of the financial obligations of the lease, nor is it included in the amount of the debt alleged to be due for which the attachment issued. The court further held that if the inclusion of the claim for attorney's fees in the complaint was improper in any respect because of its unliquidated character, such inclusion would not affect the validity of the attachment based on liquidated claims properly included in the complaint but might be subject to being struck or disallowed on proper defensive motion filed by the defendants. No such motion was filed, however, so the defendants are considered to have waived their objection to the inclusion of this claim as part of the damages sought to be recovered. The reasoning of the trial court is sound and we approve its application to the facts and circumstances of this case.
Appellants take the alternative position that even if the attachment of their property in Volusia County as a basis for the constructive service of process was properly accomplished, the process should nevertheless be considered void and ineffectual for the reason that the statute under which the attachment was made is unconstitutional. Appellants contend that this being so, the trial court never acquired jurisdiction over their person and the judgment rendered against them is void.
The constitutionality of the attachment statute was neither raised nor passed upon by the trial court prior to final judgment. Appellants urge, however, that if the statute is unconstitutional, then the assertion of jurisdiction over them pursuant to the terms of the statute constitutes fundamental error which may be raised for the first time on appeal in this court under the doctrine pronounced by the Supreme Court of Florida in the case of Florida East Coast Railway Company v. Rouse[5] and the Third District Court of Appeal in Rubin v. Sanford.[6] It is appellants' position that the invalidity of the attachment statute stems from its provisions which permit property to be attached on an ex parte presentation by the plaintiff without notice to or an opportunity to be heard by the defendant. Appellants submit as authority for their position the recent decision rendered by the Supreme Court of the United States in the case of Sniadach *159 v. Family Finance Corporation[7] in which the opinion was filed subsequent to the taking of this appeal. The Sniadach case involves the validity of the Wisconsin garnishment statute which permitted the in rem seizure of a defendant's wages held by his garnishee employer without affording the defendant notice of the application for writ or the opportunity to be heard with respect to any defenses he might have to the action. In summary the Supreme Court held that the statute which permitted a defendant's wages to be frozen in the interim between the garnishment and the culmination of the main suit without the defendant having a chance to be heard violates the due process clause of the Fourteenth Amendment to the United States Constitution and is therefore invalid. In so holding the court pointed up the overwhelming and sometimes fatal impact the garnishment of a worker's wages may have upon him, his family, and society generally. In this respect the court said:
"* * * We deal here with wages  a specialized type of property presenting distinct problems in our economic system. We turn then to the nature of that property and problems of procedural due process.
"A prejudgment garnishment of the Wisconsin type is a taking which may impose tremendous hardship on wage earners with families to support. Until a recent Act of Congress, § 304 of which forbids discharge of employees on the ground that their wages have been garnished, garnishment often meant the loss of a job. Over and beyond that was the great drain on family income. * *
* * * * * *
"The result is that a prejudgment garnishment of the Wisconsin type may as a practical matter drive a wage-earning family to the wall. Where the taking of one's property is so obvious, it needs no extended argument to conclude that absent notice and a prior hearing * * * this prejudgment garnishment procedure violates the fundamental principles of due process."
We do not conceive that the rationale of the Sniadach case is applicable to the attachment of property under the Florida statute here considered. The attachment amounts to little more than constructive notice that a suit for damages is pending against the owner and if judgment is rendered in favor of the claimant the attached property might be subjected to levy and sale to satisfy the judgment. Such proceeding does not create the evils nor result in the hardships which often follow the garnishment of wages owed to a worker. We therefore conclude that the Sniadach case is not authority for the proposition urged by appellants that the attachment statute involved herein is unconstitutional and void.
Appellants seriously urge that the pleadings, affidavits, depositions, and exhibits on file in the cause inferentially, if not directly, create genuine issues of fact and the trial court therefore erred in granting the summary final judgment. The primary thrust of appellants' argument is directed toward the amount of net rentals collected by appellee after retaking possession of the leased premises, the amount of which was credited against the damages suffered by appellee as a result of appellants' breach of the lease. It is appellants' position that the court deducted from the gross rentals received by appellee certain sums claimed by appellee to have been necessarily expended by it in maintaining, renovating, and repairing the buildings, and in repairing and replacing equipment in the apartments which was damaged, removed, or destroyed during appellants' tenancy under the lease. Appellants contend that many of such items of expense constituted capital improvements for the cost of which they should not be *160 held liable, and which should not have been deducted from the gross rentals in arriving at the amount of credits to which they were entitled as an offset against the amount of damages claimed by appellee. With such contentions we are unable to agree.
It is observed at the outset that appellants filed no pleadings in the cause setting forth the amount of credits to which they claimed to be entitled as a result of the rents collected by appellee after retaking possession of the property. Secondly, under the terms of the lease signed by them appellants agreed to maintain the leased premises and all furniture, fixtures, and equipment located therein in a good state of repair and working condition and to promptly make all necessary repairs and replace all worn-out or defective items of fixtures and equipment in quality and class equal to the original work; to keep the premises and equipment located therein in good operating condition and return the property to the lessor at the conclusion of the term in as good a condition as it was in the beginning. The lease further provides that on repossession resulting from default or breach of the lease by the lessee, the lessor is authorized to incur such expenses as may be deemed proper in order to repair, replace, and restore the premises and equipment, furniture, and fixtures located therein to their original condition. Appellants offered no evidence either by affidavit or deposition in an attempt to establish that the sums expended by appellee in repairing, replacing, or restoring the buildings, furniture, fixtures, or equipment were either unnecessary or excessive. Issues of fact do not arise merely because a party disagrees with the facts established by competent evidence submitted by the moving party in a summary judgment proceeding, nor merely because the party moved against would like the opportunity of having a jury pass upon such facts and make an independent determination as to the correctness thereof. We find nothing in the record which could be said to create a genuine issue of fact on the items of damages claimed by and awarded to appellee by the summary judgment rendered in this cause. Appellants' contention as to the existence of genuine issues of fact precluding the rendition of the judgment appealed must therefore be rejected.[8]
Even if it can be said that the pleadings, depositions, and other evidence before the court created a genuine issue of fact as to the amount of credit which should be allowed to appellee for the cost of repairing, replacing, or restoring the buildings, furniture, fixtures, or equipment located therein, or for upgrading the premises generally, the error in allowing such credits would be immaterial and not sufficient basis for reversing the judgment. This conclusion arises from the fact that the total amount of credits for the foregoing purpose which was claimed by and allowed to appellee was the sum of approximately $57,000.00. The evidence establishes without dispute that the operating deficit incurred by the appellee in managing the property during its period of repossession prior to the bringing of this action was the sum of approximately $69,000.00. Appellee made no claim for reimbursement of the amount of operating deficit existing at the time suit was commenced, nor was any part of this deficit included in the amount awarded appellee in the judgment rendered against appellants. Thus it is seen that even if the entire amount of credits allowed appellee for repair and replacement of the premises and equipment was eliminated from consideration, it would be more than offset by the amount of operating deficit for which appellee made no claim for reimbursement but to which they would have been properly entitled.
Finally, appellants challenge the correctness of the trial court's action in rendering a personal judgment against them when jurisdiction over their person was acquired only by constructive service. It is appellants' *161 contention that since the basis of the constructive service on them was the attachment of their property in Volusia County, the court's judgment must be satisfied, if at all, only out of the attached property and the personal judgment against them is unauthorized.
Prior to the adoption of our present Rules of Civil Procedure, the established law of this state was that a personal judgment based upon constructive service on a nonresident who does not appear was not valid either in Florida or elsewhere. It was established that a judgment rendered on such constructive service against a nonresident was effectual only as a judgment in rem, acting on such property as such defendant may have within the jurisdiction of the court.[9] The rule was equally well established, however, that if a nonresident upon whom constructive service of process was obtained by publication appears in the case and pleads to the merits of the cause of action, his appearance was considered to be general in nature and subjected him to any personal judgment ultimately rendered against him in the case.
Under our present Rules of Civil Procedure a defendant may challenge the court's jurisdiction over his person either by motion or by asserting such challenge in his responsive pleading. By doing so, he does not submit himself to the court's jurisdiction by the filing of other defensive motions or by answering the complaint.[10] Once having properly and timely raised the question of the court's jurisdiction over his person, a defendant is not prejudiced by participation in the trial and defending the action on its merits, and if his challenge to the court's jurisdiction is overruled, such action may be reviewed on appeal after final judgment.[11]
In the case sub judice appellants timely and properly challenged the court's jurisdiction over their person, which challenge was overruled. At that point appellants were privileged to withdraw from further participation in the case and seek review of the court's action either by interlocutory appeal under Rule 4.2, Florida Appellate Rules, 32 F.S.A., or under Rule 3.1 et seq., Florida Appellate Rules, after rendition of final judgment. In the event the jurisdiction issue was resolved against appellants on appeal, then any judgment rendered in the case against them would necessarily have been one in rem to be satisfied, if at all, out of the property attached. No personal judgment against appellants under such circumstances would have been authorized or permitted. Instead of following that course of action, appellants answered the complaint and participated in all further proceedings relating to the merits of the cause of action asserted against them. Such further participation did not waive appellants' right to seek appellate review as to the correctness of the court's order denying their challenge to its jurisdiction over their person, and that issue has been duly considered and disposed of on this appeal. Having been unsuccessful in securing reversal of the judgment on the jurisdictional issue, appellants' participation in the case on its merits subjected appellants to the court's general jurisdiction, thereby authorizing the rendition of a personal judgment against them. Appellants' contention in this regard must therefore fail.[12]
We have carefully considered the point raised by appellants concerning the propriety of the trial court's action in considering the accounting exhibits attached to the deposition taken of appellee's assistant data *162 processing manager in passing upon the motion for summary final judgment, and in denying their belated motion to file a supplemental answer. We have concluded that these points lack substantial merit and that no useful purpose would be served by a protracted explanation or detailed discussion of the several arguments advanced by appellants in support of these points. Further reference to these points will therefore be pretermitted.
For the foregoing reasons the judgment appealed herein is affirmed.
CARROLL, DONALD K., Acting C.J., and RAWLS, J., concur.
NOTES
[1] F.S. § 76.09, F.S.A.
[2] Papadakos v. Spooner (Fla.App. 1966), 186 So.2d 786.
[3] 12 A.L.R.2d 789, 790, § 2.
[4] Marten v. Credit Adjustment Service, Inc., Okl., 349 P.2d 742; District of Columbia v. World Fire & Marine Ins. Co., D.C.Mun.App., 68 A.2d 222; Olson v. Wilson & Co., 244 Iowa 895, 58 N.W.2d 381; Wetten v. Horix, 309 Ill. App. 535, 33 N.E.2d 615; Huo Chin Yin v. Amino Products Co., 141 Ohio St. 21, 46 N.E.2d 610; Lipkin v. Lester, Sup., 29 N.Y.S.2d 966.
[5] Florida East Coast Railway Company v. Rouse (Fla. 1967), 194 So.2d 260.
[6] Rubin v. Sanford (Fla.App. 1969), 218 So.2d 177.
[7] Sniadach v. Family Finance Corporation, 395 U.S. 337, 23 L.Ed.2d 349, 353, 354, 89 S.Ct. 1820, 1822.
[8] Holl v. Talcott (Fla. 1966), 191 So.2d 40.
[9] Newton v. Bryan (1940), 142 Fla. 14, 194 So. 282.
[10] Rule 1.140, R.C.P., 30 F.S.A.
[11] Green v. Roth (Fla.App. 1966), 192 So.2d 537; St. Anne Airways, Inc. v. Webb (Fla.App. 1962), 142 So.2d 142; Visioneering Concrete Construction Company v. Rogers (Fla.App. 1960), 120 So.2d 644; State ex rel. Eli Lilly and Company v. Shields (Fla. 1955), 83 So.2d 271.
[12] Newton v. Bryan, supra note 9; See also 47 Am.Jur.2d 132, Judgments, § 1067.