In the Matter of **NORTHWEST HOMES OF CHEHALIS, INC.,** a Washington corporation, Debtor.

No. 951–71B2.

United States District Court, W. D. Washington, at Seattle.

Aug. 8, 1973.

REFEREE'S DECISION

Thomas S. Zilly, Charles R. Ekberg, Lane, Powell, Moss & Miller, Seattle, Wash., for receiver.

Helmut Wallenfels, Weyerhaeuser Co. Legal Dept., Tacoma, Wash., for the Weyerhaeuser Co.

ORDER AFFIRMING REFEREE'S ORDER

LINDBERG, District Judge.

Now, upon said Petition for Review, dated December 5, 1972, and all the proceedings had before the Court; and the Court having found that the decision of the Honorable Sidney C. Volinn, Referee in Bankruptcy, and subsequent order based thereon, is in accordance with the law; it is hereby

Ordered, adjudged and decreed that the Order of the Honorable Sidney C. Volinn, Referee in Bankruptcy, entered on December 4, 1972, be and it hereby is affirmed.

In The District Court of the United States for the Western District of Washington, at Seattle

| In the Matter of Northwest Homes of Chehalis, Inc., a Washington corporation, Debtor, Weyerhaeuser Company, Respondent | In Proceedings for an Arrangement Under Chapter XI–No. 951–71B2 MEMORANDUM DECISION |

MEMORANDUM DECISION

An order has been entered adopting the stipulation of facts entered into between the Debtor's Receiver and the Respondent in this particular proceeding, Weyerhaeuser Company. From the stipulation, it appears that Weyerhaeuser claimed the Debtor owed it some $88,000 for goods sold and delivered during the year 1970, plus an additional $4,400-odd in delinquent charges, for a total of $92,000 and sued thereon in the Superi-

or Court for the State of Washington in Lewis County. The Debtor denied that it owed the plaintiff anything. Thereafter, Weyerhaeuser caused to be issued a writ of attachment without prior notice to the Debtor nor hearing, pursuant to the Washington attachment statute, R.C.W. 7.12. On April 15, 1971, the Sheriff of Lewis County executed the writ by recording with the Lewis County Auditor a notice of attachment pursuant to the procedure prescribed in R.C.W. 7.12.-030(1), which does not require such notice nor hearing. Trial of the issues was set for January 6, 1972. However, on December 15, 1971, the Debtor instituted these proceedings for an arrangement in Chapter XI of the Bankruptcy Act and on the same day an order was entered in the bankruptcy proceeding staying all lawsuits against the Debtor including that of Weyerhaeuser. This order is still in force. Weyerhaeuser, complying with this order, caused the trial date to be stricken and has not prosecuted said action further. The Debtor has at all times continued in possession of the foregoing property. As appears from the foregoing dates, the attachment lien accrued more than four months prior to the institution of the Chapter XI proceedings. The Debtor, in its bankruptcy schedule A–2(a), sets forth an indebtedness to Weyerhaeuser in the sum of $65,166.57. It is agreed that while the exact amount of the debt is in dispute, there is a substantial debt due from the Debtor to Weyerhaeuser. The attachment lien has been an encumbrance on the Debtor's title to the real estate and has been shown to be such on all title reports covering said property. Weyerhaeuser, on request of the Debtor, prior to these proceedings, released certain real estate subject to the attachment without insisting that its lien be transferred to the proceeds. Since the institution of the Chapter XI proceedings, Weyerhaeuser has released its lien, on request, authorizing the sale of real estate subject to the Court-imposed requirement that its lien be transferred to the proceeds of such sales.

The foregoing facts, centered as they are on a prejudgment attachment of real estate, focus on the issue of whether or not Sniadach v. Family Fin. Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), and cases following it require invalidation of the Weyerhaeuser attachment lien. *Sniadach* declared a statute of the State of Wisconsin authorizing pre-judgment wage garnishments to be unconstitutional because it allowed the taking of property without notice and prior hearing thereby violating the due process clause of the 14th Amendment. *Sniadach* has had a marked influence and in a relatively short period of time has been extended into other areas by State and Federal Courts. The Supreme Court of California, in the course of a considered and analytical opinion, Randone v. Appellate Department of the Supreme Court of Sacramento County, 5 Cal.3d 536, 96 Cal.Rptr. 709, 488 P.2d 13, 20 (1971), notes:

". . . the liberal application that had been accorded the *Sniadach* principle in a wide variety of contexts outside of wage garnishment . . . "

In a footnote to this statement, a number of State and Federal cases are cited showing the application of *Sniadach* to various kinds of property subjected to seizure without requisite notice or hearing, e.g., termination of welfare payments, seizure by innkeeper, confession of judgment, repossession of residence, landlord's distraint of tenants' possessions, seizure by hospital, imprisonment of debtor, termination of employment, and appointment of committee to manage incompetent's property.

It is evident that *Sniadach* and the Courts influenced by it have in no small measure been affected by the view that there is a fundamental unfairness in certain institutionalized processes which have afforded those with knowledge thereof a pre-trial or prehearing advantage over an adversary whose ability to contest was weak to begin with. The United States Supreme Court, recently, in Fuentes v. Shevin, 407 U.S. 67, 92 S. Ct. 1983, 32 L.Ed.2d 556, decided June

12, 1972, continued this concept, albeit, with a divided Court, and held unconstitutional Florida and Pennsylvania prejudgment replevin statutes. In the Florida case, Mrs. Fuentes had purchased on a conditional sale contract from Firestone a gas stove and stereo phonograph which were summarily replevied when she refused further payments because of a dispute over servicing the stove. In one of the Pennsylvania cases, a former husband of the appellant, in the course of a child custody dispute, used the replevin process to order seizure of the child's clothes, furniture, and toys. *Fuentes* appears to further the foregoing hypothesis of adjusting disparate capabilities for contest but it also states an additional and substantial dimension (407 U.S. p. 67, 92 S.Ct. p. 1983, 32 L.Ed.2d p. 574):

"This reading of *Sniadach* and *Goldberg* reflects the premise that those cases marked a radical departure from established principles of procedural due process. They did not. Both decisions were in the mainstream of past cases, having little or nothing to do with the absolute 'necessities' of life but establishing that due process requires an opportunity for a hearing before a deprivation of property takes effect. (Citing a number of cases). In none of those cases did the Court hold that this most basic due process requirement is limited to the protection of only a few types of property interests. While *Sniadach* and *Goldberg* emphasize the special importance of wages and welfare benefits, they did not convert that emphasis into a new and more limited constitutional doctrine.

Nor did they care about a rule of 'necessity' for the sort of nonfinal deprivations of property that they involved. That was made clear in Bell v. Burson, supra, holding that there must be an opportunity for a fair hearing before mere suspension of a driver's license. A driver's license clearly does not rise to the level of a 'necessity' ex-emplified by wages and welfare benefits. Rather, as the Court accurately stated, it is an 'important interest,' . . . entitled to the protection of procedural due process of law . . .

No doubt, there may be many gradations in the 'importance' or 'necessity' of various consumer goods. Stoves could be compared to television sets, or beds could be compared to tables. But if the root principle of procedural due process is to be applied with objectivity, it cannot rest upon such distinctions. The Fourteenth Amendment speaks of 'property' generally. And, under our free enterprise system, an individual's choices in the marketplace are respected, however unwise they may seem to someone else. It is not the business of a court adjudicating due process rights to make its own critical evaluation of those choices and protect only the ones that, by its own likes, are 'necessary'."

It would appear then, that the path running from *Sniadach* to *Fuentes* is not to be followed on the basis of discrete application to particular subjects but whether or not the procedure measures up to a constitutional standard without regard to what that procedure has sequestered. Carrying forward the reasoning of the Court, one man's luxury may be another's necessity. Further, who is to say that an economic enterprise, as distinguished from an individual does not have its necessities? If law is to have general application, then the wages of a president of General Motors should be no more subject to prejudgment garnishment than were those of Sniadach. In *Randone*, the garnishment was levied against Mr. *Randone's* bank account. He had been doing business as *Randone* Trucking and had failed to pay a bill of $490 to his lawyers. The garnishment impounded the sum of $176.20. Again, one would assume that were the bank account of any business impounded by a writ of garnishment sued out without prior notice and hearing, it would likewise be subject to invalidation.

However, there are certain cases which do require examination, particularly McKay v. McInnes, 279 U.S. 820, 49 S.Ct. 344, 73 L.Ed. 975 (1929), which, in a per curiam opinion, held that a prejudgment attachment of real property and shares of stock was not unconstitutional. This case was referred to in Sniadach by Justice Douglas (395 U.S. p. 340, 89 S.Ct. p. 1822) in the following context:

"A procedural rule that may satisfy due process for attachments in general, see McKay v. McInness . . . does not necessarily satisfy due process in every case . . ."

Mr. Justice Harlan, in concurring with the majority, stated (p. 343, 89 S.Ct. p. 1823):

" . . . Apart from special situations, some of which are referred to in this Court's opinion, see ante, at 339, [89 S.Ct. at 1821], I think that due process is afforded only by the kinds of 'notice' and 'hearings' which are aimed at establishing the validity, or at least the probable validity, of the underlying claims against the alleged debtor before he can be deprived of his property or its unrestricted use. I think this is the thrust of the past cases in this Court (citing cases). And I am quite unwilling to take the unexplicated per curiam in McKay v. McInness, as vitiating or diluting these essential elements of due process."

The California Supreme Court, in the Randone case, also was troubled by Sniadach's reference to McKay, particularly since the plaintiff had placed substantial reliance on the McKay case. In a footnote at p. 23, of 488 P.2d, the Court stated:

"Although the majority in Sniadach acknowledged the existence of this prior decision, a substantial number of courts have found the vitality of McKay substantially impaired by the holding of Sniadach. (Citing cases.) And Justice Harlan, in his concurrence of Sniadach, rather explicitly indicated that McKay could not survive the Sniadach decision . . . In view of (1) the unexplicated nature of the McKay opinion (2) the carefully limited authority on which the decision was directly based . . . and (3) the irreconcilable conflict between the principles underlying Sniadach and McKay's purported holding, we believe this 40-year old per curiam opinion is too thin a reed to support the reliance plaintiff has cast upon it."

The Washington State Court of Appeals has joined in the substantial number of cases following Sniadach. In Lucas v. Stapp, 6 Wash.App. 971, 497 P.2d 250 (1972), Lucas attached Stapp's car for an auto repair bill of $376.37. The writ was issued pursuant to Washington attachment statute R.C.W. 7.12. The Court stated:

"The sole question in the case is whether a portion of the Washington attachment statute, RCW 7.12.020 which authorizes seizure of property before judgment on a contract action is in conflict with the due process clause of the fourteenth amendment of the United States Constitution and article 1, section 3 of the Washington State Constitution . . .

The attachment statute does not provide for a hearing, and Stapp did not receive any notice, nor did he have the opportunity to be heard prior to the seizure of his property. Before entry of judgment in the main action, he could only recover his property by settling with Lucas or posting a redelivery bond . . ."

The Court, at page 974, 497 P.2d at page 251, stated:

"Prior to Sniadach, McKay v. McInness, 279 U.S. 820, [49 S.Ct. 344, 73 L.Ed. 975] . . . in a per curiam opinion, affirmed a ruling that a prejudgment attachment of real property and shares of stock in a contract action was not violative of due process. McKay was based upon Coffin Bros. & Co. v. Bennett, 277 U.S. 29,

[48 S.Ct. 422, 72 L.Ed. 768] . . . which held that a state officer could attach a stockholder's assets without a hearing after a bank failure, and Ownbey v. Morgan, 256 U.S. 94 [41 S.Ct. 433, 65 L.Ed. 837] . . . which held that the sovereignty of each state permits seizure of a nonresident's property to secure jurisdiction.

The principle of *Sniadach* that summary proceedings should not be used in a case which presents no situation requiring a special protection to a State or creditor interest was carried into Boddie v. Connecticut, 401 U.S. 371, [91 S.Ct. 780, 28 L.Ed.2d 113] (1971) . . . a divorce action, wherein the Court said: That the hearing required by due process is subject to waiver, and is not fixed in form does not affect its root requirement that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest, . . .

In *Randone* . . . there was a petition to discharge a prejudgment writ of attachment of a checking account. *The California Supreme Court pointed to the irreconcilable conflict between Sniadach . . . and McKay . . . and noted that the 40-year-old per curiam opinion in McKay was 'too thin a reed' to support the plaintiff's position.* (emph. supp.)

The affidavit of Lucas presents a commonplace rather than an extraordinary situation. Stapp was deprived of a 'significant property interest,' possession of his automobile, through a summary administrative proceeding in which he had no part. The fact that he could regain possession by acceding to the monetary demands of Lucas or by posting a redelivery bond does not alter the character of that deprivation."

Thus *Stapp* seems to have followed *Randone* in detaching the present line of cases from *McKay* which might have supported at one time, the thesis that real estate may be subjected to a prejudgment attachment without notice of hearing.

Logically, if the statute is found to be an unconstitutional act in a given situation, its infirmity will cause it to fail generally. The *Stapp* case holds that R. C.W. Chapter 7.12 is unconstitutional not only by virtue of the United States Constitution but also under the Washington State Constitution. In State ex rel. Evans v. Brotherhood of Friends, 41 Wash.2d 133, 247 P.2d 787, the Court, speaking to legislation authorizing slot machines, stated (p. 133, 143, 247 P.2d p. 793):

"If a statute is unconstitutional, it is and has always been a legal nullity. The point is so well established that it should require no citation of supporting authorities . . .

In Norton v. Shelby County, 118 U.S. 425, 442, [6 S.Ct. 1121, 30 L.Ed. 178], . . . the United States' Supreme Court, speaking through the eminent Mr. Justice Field, said: 'An unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed.' . . . "

Lucas v. Stapp was followed in Seattle Credit Bureau v. Hibbitt, 7 Wash.App. 219, 499 P.2d 92 (1972). The defendant in that case had purchased tires, wheels and brake linings having given security agreements to Firestone Stores, the seller; on default, Firestone assigned the agreements to the plaintiff. The Seattle Credit Bureau caused the issuance of a writ of attachment pursuant to R.C.W. 7.12, seizing the vehicle on which the merchandise was installed. The Washington Court of Appeals held this process unconstitutional under the United States and Washington Constitutions citing *Lucas, Sniadach* and *Fuentes*.

The post-*Sniadach* cases cited as validating prejudgment attachments of real estate without notice of hearing are Robinson v. Loyola Foundation, 236 So. 2d 154 ·(Fla.App.), and Black Watch Farms, Inc. v. Dick, 323 F.Supp. 100 (D.C.Conn.1971). These cases, in the Court's view, are not in accord with the great weight of authority. Moreover, each of these cases is attended by individual circumstances limiting their authority as precedent. The *Black Watch* case involved a plaintiff, suing for some 4.5 million dollars, subjecting to attachment property which was already subject to prior liens and encumbrances of some 22 million dollars. The Court, while upholding the prejudgment attachment, further stated that by virtue of these prior liens and encumbrances, the additional temporary restraint visited upon the property had to be considered as *de minimis*. In the *Robinson* case, the Court pointed out that the issue of constitutionality was not raised at all in the lower court and, while conceding that it was constrained to consider the issue of unconstitutionality even though it was raised for the first time on appeal, gave the appellant short shrift in this area by simply stating that it would consider *Sniadach* as confined to its subject matter, i.e., wages. Time has demonstrated that this evaluation of *Sniadach* is incorrect.

Some argument is made of the fact that the lien by way of attachment is not possessory and therefore does not amount to a seizure. However, there is not much question but what the attachment involves significant interference by the creditor with the Debtor's free use of the property. While possession is one of the incidents of ownership of real property, there are other facets which are of substantial nature; thus the attachment of real estate can restrain the owner of the subject property from transforming it into money by sale or mortgage just as surely as the owner of a garnished bank account is restrained from transforming his bank's promise into cash.

The attachment statute is unconstitutional under State and Federal law and the writ acquired thereunder is therefore unenforceable.

Dated at Seattle, in said District, November 17, 1972.